# UNITED STATES DEPARTMENT OF JUSTICE *v.* TAX ANALYSTS

No. 88–782.   Argued April 24, 1989—Decided June 23, 1989

MARSHALL, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, STEVENS, O'CONNOR, SCALIA, and KENNEDY, JJ., joined. WHITE, J., concurred in the judgment. BLACKMUN, J., filed a dissenting opinion, *post,* p. 156.

*Deputy Solicitor General Wallace* argued the cause for petitioner. With him on the briefs were *Acting Solicitor General Bryson, Acting Assistant Attorney General Knapp, Roy T. Englert, Jr., Jonathan S. Cohen,* and *Mary Frances Clark.*

*William A. Dobrovir* argued the cause and filed a brief for respondent.*

---

*\*Jane E. Kirtley* filed a brief for the Reporters Committee for Freedom of the Press as *amicus curiae* urging affirmance.

JUSTICE MARSHALL delivered the opinion of the Court.

The question presented is whether the Freedom of Information Act (FOIA or Act), 5 U. S. C. § 552 (1982 ed. and Supp. V), requires the United States Department of Justice (Department) to make available copies of district court decisions that it receives in the course of litigating tax cases on behalf of the Federal Government. We hold that it does.

I

The Department's Tax Division represents the Federal Government in nearly all civil tax cases in the district courts, the courts of appeals, and the Claims Court. Because it represents a party in litigation, the Tax Division receives copies of all opinions and orders issued by these courts in such cases. Copies of these decisions are made for the Tax Division's staff attorneys. The original documents are sent to the official files kept by the Department.

If the Government has won a district court case, the Tax Division must prepare a bill of costs and collect any money judgment indicated in the decision. If the Government has lost, the Tax Division must decide whether to file a motion to alter or amend the judgment or whether to recommend filing an appeal. The decision whether to appeal involves not only the Tax Division but also the Internal Revenue Service (IRS) and the Solicitor General. A division of the IRS reviews the district court's decision and prepares a recommendation on whether an appeal should be taken. The court decision and the accompanying recommendation are circulated to the Tax Division, which formulates its own recommendation, and then to the Solicitor General, who reviews the district court decision in light of the IRS and Tax Division's recommendations. If the Solicitor General ultimately approves an appeal, the Tax Division prepares a record and joint appendix, both of which must contain a copy of the district court decision, for transmittal to the court of appeals. If no appeal is

taken, the Tax Division is responsible for ensuring the payment of any court-ordered refund and for defending against any claim for attorney's fees.

Respondent Tax Analysts publishes a weekly magazine, Tax Notes, which reports on legislative, judicial, and regulatory developments in the field of federal taxation to a readership largely composed of tax attorneys, accountants, and economists. As one of its regular features, Tax Notes provides summaries of recent federal-court decisions on tax issues. To supplement the magazine, Tax Analysts provides full texts of these decisions in microfiche form. Tax Analysts also publishes Tax Notes Today, a daily electronic data base that includes summaries and full texts of recent federal-court tax decisions.

In late July 1979, Tax Analysts filed a FOIA request in which it asked the Department to make available all district court tax opinions and final orders received by the Tax Division earlier that month.[1] The Department denied the request on the ground that these decisions were not Tax Division records. Tax Analysts then appealed this denial administratively. While the appeal was pending, Tax Analysts agreed to withdraw its request in return for access to the Tax Division's weekly log of tax cases decided by the federal courts. These logs list the name and date of a case, the docket number, the names of counsel, the nature of the case, and its disposition.

Since gaining access to the weekly logs, Tax Analysts' practice has been to examine the logs and to request copies of the decisions noted therein from the clerks of the 90 or so district courts around the country and from participating attorneys. In most instances, Tax Analysts procures copies reasonably promptly, but this method of acquisition has proven

---

[1] Tax Analysts also requested copies of tax decisions received from the Claims Court and the courts of appeals. Decisions from these courts are not at issue in this case.

unsatisfactory approximately 25% of the time. Some court clerks ignore Tax Analysts' requests for copies of decisions, and others respond slowly, sometimes only after Tax Analysts has forwarded postage and copying fees. Because the Federal Government is required to appeal tax cases within 60 days, Tax Analysts frequently fails to obtain copies of district court decisions before appeals are taken.

Frustrated with this process, Tax Analysts initiated a series of new FOIA requests in 1984. Beginning in November 1984, and continuing approximately once a week until May 1985, Tax Analysts asked the Department to make available copies of all district court tax opinions and final orders identified in the Tax Division's weekly logs. The Department denied these requests and Tax Analysts appealed administratively. When the Department sustained the denial, Tax Analysts filed the instant suit in the United States District Court for the District of Columbia, seeking to compel the Department to provide it with access to district court decisions received by the Tax Division.

The District Court granted the Department's motion to dismiss the complaint, holding that 5 U. S. C. § 552(a)(4)(B), which confers jurisdiction in the district courts when "agency records" have been "improperly withheld,"[2] had not been satisfied. 643 F. Supp. 740, 742 (1986). The court reasoned that the district court decisions at issue had not been "improperly withheld" because they "already are available from

---

[2] Section 552(a)(4)(B) provides:

"On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action."

their primary sources, the District Courts," *id.*, at 743, and thus were "on the public record." *Id.*, at 744. The court did not address whether the district court decisions are "agency records." *Id.*, at 742.

The Court of Appeals for the District of Columbia Circuit reversed. 269 U. S. App. D. C. 315, 845 F. 2d 1060 (1988). It first held that the district court decisions were "improperly withheld." An agency ordinarily may refuse to make available documents in its control only if it proves that the documents fall within one of the nine disclosure exemptions set forth in § 552(b), the court noted, and in this instance, "[n]o exemption applies to the district court opinions." *Id.*, at 319, 845 F. 2d, at 1064. As for the Department's contention that the district court decisions are publicly available at their source, the court observed that "no court . . . has denied access to . . . documents on the ground that they are available elsewhere, and several have assumed that such documents must still be produced by the agency unless expressly exempted by the Act." *Id.*, at 321, 845 F. 2d, at 1066.

The Court of Appeals next held that the district court decisions sought by Tax Analysts are "agency records" for purposes of the FOIA. The court acknowledged that the district court decisions had originated in a part of the Government not covered by the FOIA, but concluded that the documents nonetheless constituted "agency records" because the Department has the discretion to use the decisions as it sees fit, because the Department routinely uses the decisions in performing its official duties, and because the decisions are integrated into the Department's official case files. *Id.*, at 323–324, 845 F. 2d, at 1068–1069. The court therefore remanded the case to the District Court with instructions to enter an order directing the Department "to provide some reasonable form of access" to the decisions sought by Tax Analysts. *Id.*, at 317, 845 F. 2d, at 1062.

We granted certiorari, 488 U. S. 1003 (1989), and now affirm.

## II

In enacting the FOIA 23 years ago, Congress sought "'to open agency action to the light of public scrutiny.'" *Department of Justice* v. *Reporters Committee for Freedom of Press*, 489 U. S. 749, 772 (1989), quoting *Department of Air Force* v. *Rose*, 425 U. S. 352, 372 (1976). Congress did so by requiring agencies to adhere to "'a general philosophy of full agency disclosure.'" *Id.*, at 360, quoting S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965). Congress believed that this philosophy, put into practice, would help "ensure an informed citizenry, vital to the functioning of a democratic society." *NLRB* v. *Robbins Tire & Rubber Co.*, 437 U. S. 214, 242 (1978).

The FOIA confers jurisdiction on the district courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." § 552(a)(4)(B). Under this provision, "federal jurisdiction is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'" *Kissinger* v. *Reporters Committee for Freedom of Press*, 445 U. S. 136, 150 (1980). Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements.[3]

In this case, all three jurisdictional terms are at issue. Although these terms are defined neither in the Act nor in its legislative history, we do not write on a clean slate. Nine Terms ago we decided three cases that explicated the meanings of these partially overlapping terms. *Kissinger* v. *Reporters Committee for Freedom of Press, supra; Forsham* v.

---

[3] The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not "agency records" or have not been "improperly" "withheld." See S. Rep. No. 813, 89th Cong., 1st Sess., 8 (1965) ("Placing the burden of proof upon the agency puts the task of justifying the withholding on the only party able to explain it"); H. R. Rep. No. 1497, 89th Cong., 2d Sess., 9 (1966) (same); cf. *Federal Open Market Committee* v. *Merrill*, 443 U. S. 340, 352 (1979).

*Harris,* 445 U. S. 169 (1980); *GTE Sylvania, Inc.* v. *Consumers Union of United States, Inc.,* 445 U. S. 375 (1980). These decisions form the basis of our analysis of Tax Analysts' requests.

### A

We consider first whether the district court decisions at issue are "agency records," a term elaborated upon both in *Kissinger* and in *Forsham.* *Kissinger* involved three separate FOIA requests for written summaries of telephone conversations in which Henry Kissinger had participated when he served as Assistant to the President for National Security Affairs from 1969 to 1975, and as Secretary of State from 1973 to 1977. Only one of these requests—for summaries of specific conversations that Kissinger had had during his tenure as National Security Adviser—raised the "agency records" issue. At the time of this request, these summaries were stored in Kissinger's office at the State Department in his personal files. We first concluded that the summaries were not "agency records" at the time they were made because the FOIA does not include the Office of the President in its definition of "agency." 445 U. S., at 156. We further held that these documents did not acquire the status of "agency records" when they were removed from the White House and transported to Kissinger's office at the State Department, a FOIA-covered agency:

> "We simply decline to hold that the physical location of the notes of telephone conversations renders them 'agency records.' The papers were not in the control of the State Department at any time. They were not generated in the State Department. They never entered the State Department's files, and they were not used by the Department for any purpose. If mere physical location of papers and materials could confer status as an 'agency record' Kissinger's personal books, speeches, and all other memorabilia stored in his office would have

been agency records subject to disclosure under the FOIA." *Id.*, at 157.

*Forsham*, in turn, involved a request for raw data that formed the basis of a study conducted by a private medical research organization. Although the study had been funded through federal agency grants, the data never passed into the hands of the agencies that provided the funding, but instead was produced and possessed at all times by the private organization. We recognized that "[r]ecords of a nonagency certainly could become records of an agency as well," 445 U. S., at 181, but the fact that the study was financially supported by a FOIA-covered agency did not transform the source material into "agency records." Nor did the agencies' right of access to the materials under federal regulations change this result. As we explained, "the FOIA applies to records which have been *in fact* obtained, and not to records which merely *could have been* obtained." *Id.*, at 186 (emphasis in original; footnote omitted).

Two requirements emerge from *Kissinger* and *Forsham*, each of which must be satisfied for requested materials to qualify as "agency records." First, an agency must "either create or obtain" the requested materials "as a prerequisite to its becoming an 'agency record' within the meaning of the FOIA." *Id.*, at 182. In performing their official duties, agencies routinely avail themselves of studies, trade journal reports, and other materials produced outside the agencies both by private and governmental organizations. See *Chrysler Corp.* v. *Brown*, 441 U. S. 281, 292 (1979). To restrict the term "agency records" to materials generated internally would frustrate Congress' desire to put within public reach the information available to an agency in its decision-making processes. See *id.*, at 290, n. 10. As we noted in *Forsham*, "The legislative history of the FOIA abounds with

. . . references to records *acquired* by an agency." 445 U. S., at 184 (emphasis added).[4]

Second, the agency must be in control of the requested materials at the time the FOIA request is made. By control we mean that the materials have come into the agency's posses-sion in the legitimate conduct of its official duties. This requirement accords with *Kissinger*'s teaching that the term "agency records" is not so broad as to include personal materials in an employee's possession, even though the materials may be physically located at the agency. See 445 U. S., at 157. This requirement is suggested by *Forsham* as well, 445 U. S., at 183, where we looked to the definition of agency records in the Records Disposal Act, 44 U. S. C. § 3301. Under that definition, agency records include "all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics, made or received by an agency of the United States Government *under Federal law or in connection with the transaction of public business . . . .*" *Ibid.* (emphasis added).[5] Furthermore, the requirement that the materials

---

[4] Title 5 U. S. C. § 552(b)(4), which exempts from disclosure trade secrets and commercial or financial information "obtained from a person," provides further support for the principle that the term "agency records" includes materials received by an agency. See *Forsham*, 445 U. S., at 184–185; see also *id.*, at 183–184 (noting that the definition of "records" in the Records Disposal Act, 44 U. S. C. § 3301, and in the Presidential Records Act of 1978, 44 U. S. C. § 2201(2), encompassed materials "received" by an agency).

[5] In *GTE Sylvania, Inc.* v. *Consumers Union of United States, Inc.*, 445 U. S. 375, 385 (1980), we noted that Congress intended the FOIA to prevent agencies from refusing to disclose, among other things, agency telephone directories and the names of agency employees. We are confident, however, that requests for documents of this type will be relatively infrequent. Common sense suggests that a person seeking such documents or materials housed in an agency library typically will find it easier to repair to the Library of Congress, or to the nearest public library, rather than to invoke the FOIA's disclosure mechanisms. Cf. *Department*

be in the agency's control at the time the request is made accords with our statement in *Forsham* that the FOIA does not cover "information in the abstract." 445 U. S., at 185.[6]

Applying these requirements here, we conclude that the requested district court decisions constitute "agency records." First, it is undisputed that the Department has obtained these documents from the district courts. This is not a case like *Forsham*, where the materials never in fact had been received by the agency. The Department contends that a district court is not an "agency" under the FOIA, but this truism is beside the point. The relevant issue is whether an agency covered by the FOIA has "create[d] or obtaine[d]" the materials sought, *Forsham*, 445 U. S., at 182, not whether the organization from which the documents originated is itself covered by the FOIA.[7]

Second, the Department clearly controls the district court decisions that Tax Analysts seeks. Each of Tax Analysts' FOIA requests referred to district court decisions in the agency's possession at the time the requests were made.

---

*of Justice* v. *Reporters Committee for Freedom of Press*, 489 U. S. 749, 764 (1989) ("[I]f the [requested materials] were 'freely available,' there would be no reason to invoke the FOIA to obtain access"). To the extent such requests are made, the fact that the FOIA allows agencies to recoup the costs of processing requests from the requester may discourage recourse to the FOIA where materials are readily available elsewhere. See 5 U. S. C. § 552(a)(4)(A).

[6] Because requested materials ordinarily will be in the agency's possession at the time the FOIA request is made, disputes over control should be infrequent. In some circumstances, however, requested materials might be on loan to another agency, "purposefully routed . . . out of agency possession in order to circumvent [an impending] FOIA request," or "wrongfully removed by an individual after a request is filed." *Kissinger* v. *Reporters Committee for Freedom of Press*, 445 U. S. 136, 155, n. 9 (1980). We leave consideration of these issues to another day.

[7] This point is implicit in *Department of Justice* v. *Julian*, 486 U. S. 1, 7, and n. 6 (1988), where it was uncontroverted that presentence reports, which had been prepared under district court auspices and turned over to the Department and the Parole Commission, constituted "agency records."

This is evident from the fact that Tax Analysts based its weekly requests on the Tax Division's logs, which compile information on decisions the Tax Division recently had received and placed in official case files. Furthermore, the court decisions at issue are obviously not personal papers of agency employees. The Department counters that it does not control these decisions because the district courts retain authority to modify the decisions even after they are released, but this argument, too, is beside the point. The control inquiry focuses on an agency's possession of the requested materials, not on its power to alter the content of the materials it receives. Agencies generally are not at liberty to alter the content of the materials that they receive from outside parties. An authorship-control requirement thus would sharply limit "agency records" essentially to documents generated by the agencies themselves. This result is incompatible with the FOIA's goal of giving the public access to all nonexempted information received by an agency as it carries out its mandate.

The Department also urges us to limit "agency records," at least where materials originating outside the agency are concerned, "to those documents 'prepared substantially to be relied upon in agency decisionmaking.'" Brief for Petitioner 21, quoting *Berry* v. *Department of Justice*, 733 F. 2d 1343, 1349 (CA9 1984). This limitation disposes of Tax Analysts' requests, the Department argues, because district court judges do not write their decisions primarily with an eye toward agency decisionmaking. This argument, however, makes the determination of "agency records" turn on the intent of the creator of a document relied upon by an agency. Such a *mens rea* requirement is nowhere to be found in the Act.[8] Moreover, discerning the intent of the drafters of a

---

[8] Nonpersonal materials in an agency's possession may be subject to certain disclosure restrictions. This fact, however, does not bear on whether the materials are in the agency's control, but rather on the subsequent question whether they are exempted from disclosure under § 552(b)(3).

document may often prove an elusive endeavor, particularly if the document was created years earlier or by a large number of people for whom it is difficult to divine a common intent.

### B

We turn next to the term "withheld," which we discussed in *Kissinger*. Two of the requests in that case—for summaries of all the telephone conversations in which Kissinger had engaged while serving as National Security Adviser and as Secretary of State—implicated that term. These summaries were initially stored in Kissinger's personal files at the State Department. Near the end of his tenure as Secretary of State, Kissinger transferred the summaries first to a private residence and then to the Library of Congress. Significantly, the two requests for these summaries were made only after the summaries had been physically delivered to the Library. We found this fact dispositive, concluding that Congress did not believe that an agency "withholds a document which has been removed from the possession of the agency prior to the filing of the FOIA request. In such a case, the agency has neither the custody nor control necessary to enable it to withhold." 445 U. S., at 150–151.[9] We accordingly refused to order the State Department to institute a retrieval action against the Library. As we explained, such a course "would have us read the 'hold' out of 'withhold. . . . A refusal to resort to legal remedies to obtain possession is simply not conduct subsumed by the verb withhold.'" *Id.*, at 151.[10]

---

[9] Although a control inquiry for "withheld" replicates part of the test for "agency records," the FOIA's structure and legislative history make clear that agency control over requested materials is a "prerequisite to triggering *any* duties under the FOIA." *Kissinger*, 445 U. S., at 151 (emphasis added); see also *id.*, at 152–153; *Forsham* v. *Harris*, 445 U. S. 169, 185 (1980).

[10] *Kissinger*'s focus on the agency's present control of a requested document was based in part on the Act's purposes and structure. With respect to the former, we noted that because Congress had not intended to "obli-

The construction of "withholding" adopted in *Kissinger* readily encompasses Tax Analysts' requests.  There is no claim here that Tax Analysts filed its requests for copies of recent district court tax decisions received by the Tax Division after these decisions had been transferred out of the Department.   On the contrary, the decisions were on the Department's premises and otherwise in the Department's control, *supra*, at 146–147, when the requests were made.  See n. 6, *supra*.   Thus, when the Department refused to comply with Tax Analysts' requests, it "withheld" the district court decisions for purposes of § 552(a)(4)(B).

The Department's counterargument is that, because the district court decisions sought by Tax Analysts are publicly available as soon as they are issued and thus may be inspected and copied by the public at any time, the Department cannot be said to have "withheld" them.   The Department notes that the weekly logs it provides to Tax Analysts contain sufficient information to direct Tax Analysts to the "original source of the requested documents."   Brief for Petitioner 23. It is not clear from the Department's brief whether this argument is based on the term "withheld" or the term "improperly." [11]   But, to the extent the Department relies on the

gate agencies to create or retain documents," an agency should not be "required to retrieve documents which have escaped its possession, but which it has not endeavored to recover."   445 U. S., at 152 (citations omitted). As for the Act's structure, we noted that, among other provisions, § 552(a) (6)(B) gives agencies a 10-day extension of the normal 10-day period for responding to FOIA requests if there is a need to search and collect the requested materials from facilities separate from the office processing the request.   The brevity of this extension period indicates that Congress did not expect agencies to resort to lawsuits to retrieve documents within that period.   See *id.*, at 153.

[11] The Court of Appeals believed that the Department was arguing "that it need not affirmatively make [the district court decisions] available to Tax Analysts because the documents have not been *withheld* to begin with." 269 U. S. App. D. C. 315, 319–320, 845 F. 2d 1060, 1064–1065 (1988) (emphasis in original).

former term, its argument is without merit. Congress used the word "withheld" only "in its usual sense." *Kissinger*, 445 U. S., at 151. When the Department refused to grant Tax Analysts' requests for the district court decisions in its files, it undoubtedly "withheld" these decisions in any reasonable sense of that term. Nothing in the history or purposes of the FOIA counsels contorting this word beyond its usual meaning. We therefore reject the Department's argument that an agency has not "withheld" a document under its control when, in denying an otherwise valid request, it directs the requester to a place outside of the agency where the document may be publicly available.

C

The Department is left to argue, finally, that the district court decisions were not "improperly" withheld because of their public availability. The term "improperly," like "agency records" and "withheld," is not defined by the Act. We explained in *GTE Sylvania*, however, that Congress' use of the word "improperly" reflected its dissatisfaction with § 3 of the Administrative Procedure Act, 5 U. S. C. § 1002 (1964 ed.), which "had failed to provide the desired access to information relied upon in Government decisionmaking, and in fact had become 'the major statutory excuse for withholding Government records from public view.'" 445 U. S., at 384, quoting H. R. Rep. No. 1497, 89th Cong., 2d Sess., 3 (1966). Under § 3, we explained, agencies had "broad discretion . . . in deciding what information to disclose, and that discretion was often abused." 445 U. S., at 385.

In enacting the FOIA, Congress intended "to curb this apparently unbridled discretion" by "clos[ing] the 'loopholes which allow agencies to deny legitimate information to the public.'" *Ibid.* (citation omitted); see also *EPA* v. *Mink*, 410 U. S. 73, 79 (1973). Toward this end, Congress formulated a system of clearly defined exemptions to the FOIA's otherwise mandatory disclosure requirements. An agency must disclose agency records to any person under § 552(a), "unless

they may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b)." *Department of Justice* v. *Julian*, 486 U. S. 1, 8 (1988). Consistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass. See, *e. g., ibid.; FBI* v. *Abramson*, 456 U. S. 615, 630 (1982). More important for present purposes, the exemptions are "explicitly exclusive." *FAA Administrator* v. *Robertson*, 422 U. S. 255, 262 (1975); see also *Rose*, 425 U. S., at 361; *Robbins Tire & Rubber Co.*, 437 U. S., at 221; *Mink, supra*, at 79. As JUSTICE O'CONNOR has explained, Congress sought "to insulate its product from judicial tampering and to preserve the emphasis on disclosure by admonishing that the 'availability of records to the public' is not limited, 'except as *specifically* stated.'" *Abramson, supra*, at 642 (dissenting opinion) (emphasis in original), quoting § 552(c) (now codified at § 552(d)); see also 456 U. S., at 637, n. 5; H. R. Rep. No. 1497, *supra*, at 1. It follows from the exclusive nature of the § 552(b) exemption scheme that agency records which do not fall within one of the exemptions are "improperly" withheld.[12]

The Department does not contend here that any exemption enumerated in § 552(b) protects the district court decisions sought by Tax Analysts. The Department claims nonetheless that there is nothing "improper" in directing a requester "to the principal, public source of records." Brief for Petitioner 26. The Department advances three somewhat re-

---

[12] Even when an agency does not deny a FOIA request outright, the requesting party may still be able to claim "improper" withholding by alleging that the agency has responded in an inadequate manner. Cf. § 552(a) (6)(C); *Kissinger* v. *Reporters Committee for Freedom of Press*, 445 U. S., at 166 (STEVENS, J., concurring in part and dissenting in part). No such claim is made in this case. Indeed, Tax Analysts does not dispute the Court of Appeals' conclusion that the Department could satisfy its duty of disclosure simply by making the relevant district court opinions available for copying in the public reference facility that it maintains. See 269 U. S. App. D. C., at 321–322, and n. 15, 845 F. 2d, at 1066–1067, and n. 15.

152

lated arguments in support of this proposition. We consider them in turn.

First, the Department contends that the structure of the Act evinces Congress' desire to avoid redundant disclosures. An understanding of this argument requires a brief survey of the disclosure provisions of § 552(a). Under subsection (a)(1), an agency must "currently publish in the Federal Register" specific materials, such as descriptions of the agency, statements of its general functions, and the agency's rules of procedure. Under subsection (a)(2), an agency must "make available for public inspection and copying" its final opinions, policy statements, and administrative staff manuals, "unless the materials are promptly published and copies offered for sale." Under subsection (a)(3), the general provision covering the disclosure of agency records, an agency need not make available those materials that have already been disclosed under subsections (a)(1) and (a)(2). Taken together, the Department argues, these provisions demonstrate the inapplicability of the FOIA's disclosure requirements to previously disclosed, publicly available materials. "A fortiori, a judicial record that is a public document should not be subject to a FOIA request." *Id.*, at 29.

The Department's argument proves too much. The disclosure requirements set out in subsections (a)(1) and (a)(2) are carefully limited to situations in which the requested materials have been previously published or made available by the *agency itself.* It is one thing to say that an agency need not disclose materials that it has previously released; it is quite another to say that an agency need not disclose materials that some other person or group may have previously released. Congress undoubtedly was aware of the redundancies that might exist when requested materials have been previously made available. It chose to deal with that problem by crafting only narrow categories of materials which need not be, in effect, disclosed twice *by the agency.* If Congress had wished to codify an exemption for all publicly available ma-

terials, it knew perfectly well how to do so. It is not for us to add or detract from Congress' comprehensive scheme, which already "balances, and protects all interests" implicated by Executive Branch disclosure. *Mink, supra,* at 80, quoting S. Rep. No. 813, 89th Congress, 1st Sess., 3 (1965).[13]

It is not surprising, moreover, that Congress declined to exempt all publicly available materials from the FOIA's disclosure requirements. In the first place, such an exemption would engender intractable fights over precisely what constitutes public availability, unless the term were defined with precision. In some sense, nearly all of the information that comes within an agency's control can be characterized as publicly available. Although the form in which this material comes to an agency—*i. e.,* a report or testimony—may not be generally available, the information included in that report or testimony may very well be. Even if there were some agreement over what constitutes publicly available materials, Congress surely did not envision agencies satisfying their disclosure obligations under the FOIA simply by handing requesters a map and sending them on scavenger expeditions throughout the Nation. Without some express indication in the Act's text or legislative history that Congress intended such a result, we decline to adopt this reading of the statute.

The Department's next argument rests on the fact that the disclosure of district court decisions is partially governed by other statutes, in particular 28 U. S. C. § 1914, and by rules

---

[13] The obligations imposed under subsections (a)(1) and (a)(2) are not properly viewed as additions to the disclosure exemptions set out in subsection (b). If an agency refuses to disclose agency records that indisputably fall within one of the subsection (b) exemptions, the agency has "withheld" the records, albeit not "improperly" given the legislative authorization to do so. By contrast, once an agency has complied with the subsection (a)(1) and (a)(2) obligations, it can no longer be charged with "withholding" the relevant records.

set by the Judicial Conference of the United States. The FOIA does not compel disclosure of district court decisions, the Department contends, because these other provisions are "more precisely drawn to govern the provision of court records to the general public." Brief for Petitioner 30. We disagree. As with the Department's first argument, this theory requires us to read into the FOIA a disclosure exemption that Congress did not itself provide. This we decline to do. That Congress knew that other statutes created overlapping disclosure requirements is evident from § 552(b)(3), which authorizes an agency to refuse a FOIA request when the materials sought are expressly exempted from disclosure by another statute. If Congress had intended to enact the converse proposition—that an agency may refuse to provide disclosure of materials whose disclosure is *mandated* by another statute—it was free to do so. Congress, however, did not take such a step.[14]

The Department's last argument is derived from *GTE Sylvania*, where we held that agency records sought from the Consumer Products Safety Commission were not "improperly" withheld even though the records did not fall within one of subsection (b)'s enumerated exemptions. The Commission had not released the records in question because a district court, in the course of an unrelated lawsuit, had enjoined the Commission from doing so. In these circumstances, we held, "[t]he concerns underlying the Freedom of Information Act [were] inapplicable, for the agency . . . made no effort to avoid disclosure." 445 U. S., at 386. We therefore approved the Commission's compliance with the injunction, noting that when Congress passed the FOIA, it had not "intended to require an agency to commit contempt of court in order to release documents. Indeed, Congress viewed the federal courts as the necessary protectors of the public's right to know." *Id.*, at 387.

---

[14] It is unclear, moreover, whether 28 U. S. C. § 1914 permits a private cause of action to compel disclosure of a court decision.

Although the Department is correct in asserting that *GTE Sylvania* represents a departure from the FOIA's self-contained exemption scheme, this departure was a slight one at best, and was necessary in order to serve a critical goal independent of the FOIA—the enforcement of a court order. As we emphasized, *GTE Sylvania* arose in "a distinctly different context" than the typical FOIA case, *id.*, at 386, where the agency decides for itself whether to comply with a request for agency records. In such a case, the agency cannot contend that it has "no discretion . . . to exercise." *Ibid.*

The present dispute is clearly akin to those typical FOIA cases. No claim has been made that the Department was powerless to comply with Tax Analysts' requests. On the contrary, it was the Department's decision, and the Department's decision alone, not to make the court decisions available. We reject the Department's suggestion that *GTE Sylvania* invites courts in every case to engage in balancing, based on public availability and other factors, to determine whether there has been an unjustified denial of information. The FOIA invests courts neither with the authority nor the tools to make such determinations.

## III

For the reasons stated, the Department improperly withheld agency records when it refused Tax Analysts' requests for copies of the district court tax decisions in its files.[15] Accordingly, the judgment of the Court of Appeals is

*Affirmed.*

JUSTICE WHITE concurs in the judgment.

---

[15] On appeal, Tax Analysts limited its requests to the approximately 25% of the district court decisions that it was unable to procure from court clerks or other sources. See 269 U. S. App. D. C., at 318, n. 5, 845 F. 2d, at 1063, n. 5; Brief for Respondent 8, n. 7. The Court of Appeals' remand thus was limited to these decisions, as is our affirmance. However, the reasoning we have employed applies equally to all of the district court decisions initially sought by Tax Analysts.

JUSTICE BLACKMUN, dissenting.

The Court in this case has examined once again the Freedom of Information Act (FOIA), 5 U. S. C. § 552. It now determines that under the Act the Department of Justice on request must make available copies of federal district court orders and opinions it receives in the course of its litigation of tax cases on behalf of the Federal Government. The majority holds that these qualify as agency records, within the meaning of § 552(a)(4)(B), and that they were improperly withheld by the Department when respondent asked for their production. The Court's analysis, I suppose, could be regarded as a fairly routine one.

I do not join the Court's opinion, however, because it seems to me that the language of the statute is not that clear or conclusive on the issue and, more important, because the result the Court reaches cannot be one that was within the intent of Congress when the FOIA was enacted.

Respondent Tax Analysts, although apparently a nonprofit organization for federal income tax purposes, is in business and in that sense is a commercial enterprise. It sells summaries of these opinions and supplies full texts to major electronic data bases. The result of its now-successful effort in this litigation is to impose the cost of obtaining the court orders and opinions upon the Government and thus upon taxpayers generally. There is no question that this material is available elsewhere. But it is quicker and more convenient, and less "frustrat[ing]," see *ante*, at 140, for respondent to have the Department do the work and search its files and produce the items than it is to apply to the respective court clerks.

This, I feel, is almost a gross misuse of the FOIA. What respondent demands, and what the Court permits, adds nothing whatsoever to public knowledge of Government operations. That, I had thought, and the majority acknowledges, see *ante*, at 142, was the real purpose of the FOIA and the

spirit in which the statute has been interpreted thus far. See, *e. g., Forsham* v. *Harris,* 445 U. S. 169, 178 (1980); *NLRB* v. *Robbins Tire & Rubber Co.,* 437 U. S. 214, 242–243 (1978). I also sense, I believe not unwarrantedly, a distinct lack of enthusiasm on the part of the majority for the result it reaches in this case.

If, as I surmise, the Court's decision today is outside the intent of Congress in enacting the statute, Congress perhaps will rectify the decision forthwith and will give everyone concerned needed guidelines for the administration and interpretation of this somewhat opaque statute.