**WAR BABES, et al., Plaintiffs,**

v.

**Don WILSON, et al., Defendants.**

**Civ. A. No. 88–3633.**

United States District Court,
District of Columbia.

July 16, 1990.

Joan S. Meier, Winthrop, Stimson, Putnam & Roberts, Washington, D.C., for plaintiffs.

R. Craig Lawrence, Asst. U.S. Atty., Civ. Div., and Christopher Runkel, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

In this Freedom of Information Act case of unusual poignancy, plaintiffs, a voluntary association of some 300 British citizens ("War Babes"), and three of its members, seek to acquire information from the U.S. government by which they hope to locate, and if possible to establish contact with, the former U.S. servicemen they believe to be their natural fathers. Each member of the group claims to have been born of a liaison between his or her British mother and an American father serving in the U.S. armed forces in England during World War II. Defendants are the U.S. Secretary of Defense and the archivist of the National Archives and Records Administration (hereinafter, collectively, "NARA"), the custodian of the putative fathers' military service records from which their present whereabouts might be learned.[1]

War Babes and its members have, to date, submitted 34 FOIA requests to NARA for the home addresses of specifically identified veterans. NARA acknowledges that 18 current addresses for the servicemen named are known to NARA, but it refuses to disclose them—even so generally as by city or state—citing FOIA Exemption 6, 5 U.S.C. § 552(b)(6), on the ground that to do so would be a "clearly

---

**1.** Jurisdiction is predicated on 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

**2**

unwarranted invasion of personal privacy." [2]

The parties have cross-moved for partial summary judgment, the issue presented, they say, being entirely one of law.

■ FOIA requires a government agency to disclose all records requested by anyone unless the information sought falls within one of the nine specific statutory exemptions listed in § 552(b). 5 U.S.C. § 552(d). Among those exemptions, Exemption 6 provides that an agency shall not disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In reviewing whether an agency has justifiably refused to release information pursuant to a FOIA exemption, including Exemption 6, a district court must conduct a *de novo* review of the evidence and must order the production of the records unless the agency sustains its burden of establishing that the FOIA exemption is properly invoked and prohibits the release of the information sought. 5 U.S.C. § 552(a)(4)(B). *See United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 1472, 103 L.Ed.2d 774 (1989).

Indeed, the *Reporters Committee* case is the Supreme Court's most recent pronouncement on the subject of the availability under FOIA of information in government files about private individuals rather than the government itself. In *Reporters Committee* the Supreme Court reversed a decision of the D.C. Circuit which had held FBI "rap sheets" to be disclosable under FOIA, in so doing stating certain principles which have shaped still more recent decisions of this Circuit. Within months of the Supreme Court's decision in *Reporters Committee,* the D.C. Circuit had two occasions to apply its teaching in the context of requests, under FOIA and otherwise, for the names and home addresses of former

or current federal employees, and has, so far, found the information protected from disclosure.

In *National Association of Retired Federal Employees v. Horner,* 879 F.2d 873 (D.C.Cir.1989) (*"NARFE"*), cert. denied, — U.S. —, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990), the court of appeals upheld the refusal of the Office of Personnel Management to disclose the names and home addresses of retired federal employees at the request of a non-profit association purporting to espouse the interests of such persons. And, in *Federal Labor Relations Authority v. U.S. Department of the Treasury,* 884 F.2d 1446 (D.C.Cir.1989), cert. denied, — U.S. —, 110 S.Ct. 863, 107 L.Ed.2d 947 (1990), only nine weeks after *NARFE,* the court of appeals refused to require various federal agencies to furnish federal employee unions with names and home addresses of agency employees working within the unions' respective bargaining units. In each case the court of appeals perceived absolutely no public interest (of FOIA origin, at least) in disclosure of the information—it would reveal nothing about " 'what [the] government is up to' " (*see Reporters Committee,* 109 S.Ct. at 1481)—while raising the specter of commercial solicitations of the employees at home by other FOIA requesters whose motives might be less benign.[3]

In *NARFE,* however, the court of appeals instructed that the inquiry to be made of an agency's reliance upon Exemption 6 to thwart a FOIA request is, first, to determine

> whether [the] disclosure [of the information sought] would compromise a substantial, as opposed to a *de minimis,* privacy interest. If no significant privacy interest is implicated ..., FOIA demands disclosure. If, on the other hand, a substantial privacy interest is at stake, then we must weigh that privacy interest

---

2. NARA asserts that a fire in 1973 at the records storage facility destroyed over 80 percent of the records for Army personnel discharged during the relevant period, and that it has consequently been able to locate records for only 18 servicemen.

3. The identity of a FOIA requester, as a rule, "has no bearing on the merits of his or her FOIA request." *See Reporters Committee,* 109 S.Ct. at 1480.

in nondisclosure against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy."

879 F.2d at 874 (citing, as well, *Department of Justice v. Tax Analysts*, 492 U.S. 136, 109 S.Ct. 2841, 2850–53, 106 L.Ed.2d 112 (1989); *Ripskis v. Department of Housing and Urban Development*, 746 F.2d 1, 3 (D.C.Cir.1984); and *Reporters Committee*, 109 S.Ct. at 1476)).

■ Accordingly, this Court must first determine here whether NARA has established that the World War II servicemen the plaintiffs have identified have a "substantial" or a *de minimis* privacy interest in government records as to their whereabouts. In *NARFE*, the court of appeals observed that other circuits have found individuals to have a significant privacy interest in avoiding widespread disclosure of their names and addresses. 879 F.2d at 875. Yet, having reviewed its own precedent, the court of appeals concluded that

> the disclosure of names and addresses is not inherently and always a significant threat to the privacy of those listed; whether it is a significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue. *Id.* at 877.[4]

Plaintiffs argue that the home addresses—and they stress they would be content with merely city and state of residence—of these servicemen implicate, at most, a *de minimis* privacy interest, neither intimate nor sensitive in nature. They observe that the home addresses of the vast majority of the U.S. resident population are published annually in public telephone books, that people routinely give out their addresses on forms available to the public, and that the government itself treats these addresses as public information in many situations. Plaintiffs suggest that most jurisdictions permit disclosure of addresses contained in records of motor vehicle departments and local voter registration offices, and that the Federal Election Commission freely discloses names and addresses of contributors to federal political campaigns.[5]

Plaintiffs submit that the only "characteristic" that would be revealed by disclosure of the addresses of the former servicemen is that these men were, in fact, enlisted or commissioned in the U.S. military. The addresses, and the records from which they can be derived, in and of themselves, do not confirm or even imply, on their face, that these men fathered the children who seek the information. Disclosure of the whereabouts of these servicemen, argue plaintiffs, will not reveal medical or financial information, nor any other intimate details about their lives. And the consequence likely to ensue from the disclosure of the records is, quite possibly, that grown children and aging parents will meet for the first time and fulfill a life-long yearning of the former—very likely to be reciprocated—to establish a family bond. At worst, plaintiffs assert, they will learn of the passing of a natural father or learn that the serviceman identified is of no relation to him or her.

NARA submits that disclosure of the servicemen's addresses would, in effect, represent a public affirmation of plaintiffs' contention that these men fathered children, many out of wedlock, during World War II, which could be both highly embarrassing and personally disturbing to them. NARA also contends that the court of appeals' ruling in *NARFE* leaves this Court no latitude in which to find that the consequences of disclosure could constitute anything other than a significant harm to the servicemen, having stated that, in such sit-

---

4. In *NARFE,* the court of appeals held nevertheless that disclosure of the names and addresses of persons added to annuity rolls by the Office of Personnel Management would interfere with the employees' "reasonable expectations of undisturbed enjoyment in the solitude and seclusion of their own homes." 879 F.2d at 876.

5. Plaintiffs also refer the Court to an unreported 1985 case in which another judge of this district court found that the Department of Defense itself sold a list of the names and addresses of 1.4 million service members to a presidential campaign committee which had requested the information under FOIA. *See Hopkins v. Department of the Navy,* 1985 Westlaw 17673 at 6.

4

uations, harm occurs "where disclosure of the information invades someone's privacy not because it is embarrassing but because it invites unwanted intrusions." *Id.* at 878.

The record does not support a conclusion, however, that release of the addresses would lead to an *unwanted* intrusion. Plaintiffs observe, and NARA concedes, in effect, that it has absolutely no evidence that any of the identified servicemen would not desire—indeed, might insist—that their addresses be released to the plaintiffs, were they to learn of the requests.[6] NARA merely recites Department of Defense policy and a prior blanket determination that such disclosure would constitute a clearly unwarranted invasion of privacy to justify their intransigence. By contrast, plaintiffs have provided the Court with affidavits of members of War Babes who successfully located their fathers and report the fathers to be "delighted" to have been discovered, and as well with affidavits from U.S. servicemen who searched for years to locate their own British offspring and believe that the reunions that might occur would be anything but unwelcome to their comrades-in-arms.[7]

It must be remembered, moreover, that it is the "privacy" of the servicemen, and of no one else, which is implicated by the request. NARA may be the repository of the information, but in asserting a privacy interest against disclosure, it acts only as fiduciary, not as principal. Yet nowhere in this record is it shown that NARA is acting in accordance with the wishes of any of its beneficiaries. Preservation of their privacy might, in the circumstances, be the least of their concerns, and it cannot be presumed in the absence of proof.

The Supreme Court observed years ago, in *Department of the Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), that the clear legislative history was to the effect that "[e]xemption 6 was directed at threats to privacy interests more palpable than mere possibilities." *Id.* at 380 n. 19, 96 S.Ct. at 1608 n. 19. And it is now axiomatic that in order to satisfy its burden of establishing that an exemption claim is justified, the government may not rely on "conclusory and generalized allegations." *Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The government is obliged to provide enough evidence to enable the district court to assess independently whether a FOIA exemption is properly invoked. *Id.* at 826–28.

This Court finds that NARA has failed to sustain its burden of showing that, in the circumstances, disclosure of the whereabouts of the identified servicemen to plaintiffs would constitute a clearly unwarranted invasion of their personal privacy. The assertion that disclosure of the records would invite an "unwanted intrusion" upon their tranquility, and *a fortiori,* that the servicemen have a substantial, as opposed to a *de minimis* privacy interest (or, for that matter, any privacy interest at all) in shielding their whereabouts from plaintiffs, is, at the moment, sheer speculation.[8] The Court also finds, NARA's protestations to the contrary notwithstanding, that it would not be unduly burdensome to require NARA to contact each of the subject servicemen to determine whether the disclosure of his address would be offensive to him.[9] The trivial expenditure of money and effort necessary cannot, in good conscience, be allowed to relieve NARA of its burden of proof when its refusal to comply

6. Plaintiffs' App. 22, Adm. 6, 7.

7. *See* Plaintiffs' App. 1–18.

8. Because the Court is unable to determine conclusively, at this juncture, whether the servicemen have a substantial privacy interest at stake, it is unnecessary to address the level of public interest in the release of the records to be weighed against the servicemen's privacy interest. *See NARFE,* 879 F.2d at 874.

9. In light of NARA's representation to the Court that it has been and continues to be willing to forward letters from plaintiffs to identified servicemen, the Court finds illogical NARA's argument that contact by the government at this point, for the purpose of obtaining consent to the disclosure of the servicemen's addresses, would be unduly burdensome, or, in fact, any less intrusive on the quiet enjoyment of their privacy.

with the request rests upon such a dubious premise.

The Court concludes that, at least in the unique circumstances of this case, the government's burden of proof that there is a privacy interest implicated at all cannot be sustained without evidence from the respective servicemen to that effect. And, since such evidence, if it exists, is accessible only to NARA, it is upon NARA that the burden of coming forward with that evidence must rest.

For the foregoing reasons, therefore, it is, this 16th day of July, 1990,

ORDERED, that defendants may supplement the record within sixty (60) days with declarations of the servicemen (or of their duly appointed personal representatives) whose identities have been provided them by plaintiffs, affirmatively asserting a privacy interest in their current or last known home addresses, failing which, as to those for whom no such proof is adduced, plaintiffs' motion for partial summary judgment will be granted; and it is

FURTHER ORDERED, that defendants' cross-motion for partial summary judgment is denied without prejudice; and it is

FURTHER ORDERED, that this case is scheduled for a further status conference on September 17, 1990 at 9:30 a.m.