DYK, Circuit Judge, dissenting in part and concurring-in the judgment. The majority holds that we lack jurisdiction to review revisions to a Department of Veterans Affairs (“VA”) manual used by the agency to adjudicate veterans benefits. The majority concludes it is bound to reach this result by the recent decision of another panel in Disabled American Veterans v. Secretary of Veterans Affairs (DAV), 859 F.3d 1072 (Fed. Cir. 2017). There, the panel categorically held, that “[wjhere, as here, manual provisions are interpretations adopted by the agency, not published in the Federal Register, not binding on the Board [of Veterans’ Appeals], and contained within an administrative staff manual, they fall” outside the. scope' of 5 U.S.C. §§ 552(a)(1) and 553. DAV, 859 F.3d at 1078. It follows that there is no jurisdiction under 38 U.S.C. §.502. Id. I agree we are bound by DAV to hold that the manual revisions are not reviewable. But I respectfully suggest that DAV was wrongly decided. The analysis of 5 U.S.C. § 552(a)(1) in DAV—-rendered without substantial briefing on that statutory, provision—conflicts with our prior decisions applying that subsection to VA actions. The rule established by DAV also departs from the approach of other courts of appeals, which have held that analogous agency pronouncements are reviewable. Nothing in § 502 suggests that we should be less generous in our review with respect to VA than other courts have been with .respect to other agencies. And DAV imposes a substantial and unnecessary burden on individual veterans, requiring that they undergo protracted agency adjudication in order to obtain preenforcement judicial review of a purely legal question that is already ripe for our review. I Pursuant to the Agent Orange Act of 1991, 38 U.S.C. § 1116, and VA regulations, veterans who “served in the Republic of Vietnam ... shall be presumed to have been exposed” to Agent Orange, 38 C.F.R. § 3.307(a)(6)(iii). The regulations further define “[s]ervice in the Republic of Vietnam” to “include[ ] service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam.” Id. For those veterans covered by the presumption, certain specified diseases “shall be considered to have been incurred or aggravated by such service, notwithstanding that there is no record evidence of such disease during the, period of such service.” § 1116(a)(1). This presumed service connection was established because, as Congress realized,.in the absence of adequate contemporaneous records and testing, “it was too difficult to determine who was exposed and who was not.” Haas v. Peake, 525 F.3d 1168, 1185 (Fed. Cir. 2008); see also LeFevre v. Sec’y, Dep’t of Veterans Affairs, 66 F.3d 1191, 1197 (Fed. Cir. 1995) (“Congress ... recognized that ordinarily it would be impossible for an individual veteran to establish that his disease: resulted from exposure to herbicides in Vietnam.”). , Many of the rules that govern whether and how to apply the presumption of service connection are set forth in a VA document known as the Adjudications Procedures Manual M21-1 (the “Manual”), “an internal manual used to convey guidance to VA adjudicators” in dealing with veterans’ benefits claims. Maj. Op. 1105 (quoting VA Adjudications Manual, M21-1; Rescission of Manual M21-1 Provisions Related to Exposure to Herbicides Based on Receipt of the Vietnam Service Medal, 72 Fed. Reg. 66,218, 66,219 (Nov. 27, 2007)). As described by the majority, the Manual has for at least a decade included service in the “inland waterways” of Vietnam as sufficient to warrant the presumption. Id. at 1106. In a 2009 letter, VA supplemented this provision by defining “inland waterways” to include rivers and deltas but not harbors and bays. Id. Petitioner Gray challenged that definition before the Court of Appeals for Veterans Claims, which found it to be both irrational and inconsistent with VA’s own regulations. Id. (citing Gray v. McDonald, 27 Vet.App. 313, 322-25 (2015)). The matter was remanded for further action by the Secretary. Id. (citing Gray, 27 Vet.App. at 326-27). In February 2016, following the remand by the Court of Appeals for Veterans Claims, VA revised the portion of the Manual concerning its interpretation of the Agent Orange Act’s requirement that the veteran have “served in the Republic’ of Vietnam.” These revisions for the first time established a detailed test for determining whether service aboard a vessel in the vicinity of Vietnam suffices to establish a presumption of service connection. First, mirroring its 2009 letter, VA inserted a new instruction that “[sjervice on offshore waters does not establish a presumption.” Manual § IV.ii.l.H.2.a. In other words, while service in inland waterways qualifies, service in the offshore waters of Vietnam does not constitute service in the Republic of Vietnam. The revised Manual then goes on to narrowly define “inland waterways”[1] at the same time it broadly defines “offshore waters”: “Offshore waters are the high seas and any coastal or other water feature, such as a bay, inlet, or harbor, containing salty or brackish water and subject to regular tidal influence. This includes salty and brackish waters situated between rivers and the open ocean.” Id. § IV.ii.l.H.2.b. Finally, the Manual notes that these revisions change the treatment of Qui Nhon Bay Harbor and Ganh Rai Bay: service in these bays previously entitled a veteran to the presumption, but they now fall outside the Manual’s definition of inland waterways. Id. § IV.ii.l.H.2.c. The Manual revisions significantly restrict the right to the presumptive service connection. The question before us is whether the revisions' are subject to preenforcement judicial review. II Our jurisdiction here rests on 38 U.S.C. § 502, which provides, “An action of the Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers is subject to judicial review.”' Section 553 defines- the requirements for notice-and-comment rule-making. Section 552(a)(1) defines the circumstances when publication in the Federal Register is required and covers, among other things, “statements of geheral policy or interpretations of general applicability formulated and adopted by the agency.” 5 U.S.C. § 552(a)(1)(D). While I agree with DAV that the Manual is not the type of document that is reviewable because it is subject to the notice-and-comment rule-making provisions of § 553, it is nevertheless an interpretation of general applicability under § 552(a)(1). Other circuits have held that agency pronouncements such as those involved here are subject to preenforcement review. Thus, for example, the District of Columbia Circuit has found agency guidance documents reviewable where, as here, the petitioners present purely legal claims. In Appalachian Power Co. v. Environmental Protection Agency, 208 F.3d 1015, 1020-23 (D.C. Cir. 2000), the District of Columbia Circuit determined it had jurisdiction, to review a Clean Air Act guidance document published on an Environmental Protection Agency (“EPA”) website. -Although informally published and not subject to notice and comment, the guidance was found to be a “final agency action, reflecting a settled agency position which has legal consequences” for the parties. Id. at 1023. The court’s decision rested in part on its observation that, as with the VA Manual revisions at issue here, “officials in.the field [wejre bound to apply” the rules set forth in the guidance. Id. at 1022. In 2011, yet another Clean Air Act guidance was found reviewable where it bound EPA regional directors. See Nat. Res. Def. Council v. Envtl. Prot. Agency, 643 F.3d 311, 320 (D.C. Cir. 2011). In the transportation context, the District of Columbia Circuit found jurisdiction to review a Federal Highway Administration investigative training manual. Aulenback, Inc. v. Fed. Highway Admin., 103 F.3d 156, 163-65 (D.C. Cir. 1997); see also W. Coal Traffic League v. United States, 719 F.2d 772, 780 (5th Cir. 1983) (en banc) (reviewing guidelines of thp Interstate Commerce Commission for regulating railroad rates). Thus the circuit found agency guidance, binding on agency subordinates, to be reviewable. Nothing in § 502 suggests that we should be less generous in. our review of actions taken by VA. There is, of course, a “well-settled presumption that agency actions are reviewable,” unless Congress clearly precludes such review. LeFevre, 66 F.3d at 1198. There is no such clear preclusion in the VA statute. To the contrary, here—as in the other circuit cases discussed above—in the relevant jurisdictional provision, “Congress has declared its preference for preenforcement review of agency rules.” Nat’l Org. of Veterans’ Advocates, Inc. v. Sec’y of Veterans Affairs, 330 F.3d 1345, 1347 (Fed. Cir. 2003). Ill Preenforcement review of manual provisions is entirely consistent with the language of § 502. In that statute, as noted earlier, Congress chose to define our jurisdiction with reference to the Administrative Procedure Act’s provisions concerning the requirements for public notice of agency actions. See 38 U.S.C. § 502. Agency actions requiring notice-and-comment rule-making were made reviewable by reference to § 553. In addition, Congress made reviewable other agency actions described in § 552(a)(1). Section 552(a) establishes a" hierarchy of government records.[2] Several categories of records most directly affecting members of the public must be published in the Federal Register, see § 552(a)(1); many routine or internal agency records must be publicly available, see § 552(a)(2); and still others need only be available by request, see § 552(a)(3). With respect to interpretive rules, § 552(a)(2)(B) directs that if they are “of general applicability,” the Federal Register publication requirement of § 552(a)(1)(D) applies. In short, “statements of general policy or interpretations of general applicability formulated and adopted by the agency,” 5 U.S.C. § 552(a)(1)(D), must be published in the Federal Register and are thus reviewable under § 502. The relevant question for jurisdictional purposes, then, is whether the Manual revisions here are properly characterized as “statements of general policy or interpretations of general applicability.” If so, we have jurisdiction under § 502. DAV never directly addressed this question of the scope of “interpretations of general applicability.” DAV’s analytical omission is not surprising given that the petitioners in that case focused their jurisdictional argument primarily on whether the Manual revisions at issue were substantive rules requiring notice and comment under § 553. The panel nonetheless rejected the applicability of § 552(a)(1). Latching onto the undisputed fact that the Manual is an “administrative staff manual” under § 552(a)(2)—a provision not referenced in § 502—the DAV court held that we lack jurisdiction “[wjhere, as here, manual provisions are interpretations adopted by the agency, [1] not published in the Federal Register, [2] not binding on the Board itself, and [3] contained within an administrative staff manual, they fall within § 552(a)(2)—not § 552(a)(1).” 859 F.3d at 1078. None of these three theories is supportable. First, the fact that the Manual revisions were not in fact published in the Federal Register does not support the majority’s result. As the majority in this case and the panel opinion in DAV acknowledge, Maj. Op. 1108-09; DAV, 859 F.3d at 1077, an agency’s choice of whether and where to publish a rule are not controlling, see, e.g., Preminger v. Sec’y of Veterans Affairs, 632 F.3d 1345, 1351 (Fed. Cir. 2011) (per curiam); Anderson v. Butz, 550 F.2d 459, 463 (9th Cir. 1977). Indeed, neither the majority here nor DAV cites any case in which the decision not to publish was even relevant in deciding the scope of § 552(a)(1). A contrary rule would permit the agency to defeat judicial review by the simple expedient of failing to fulfill its obligation to publish the document in the Federal Register. Second, the fact that the Manual is not binding on the Board is equally irrelevant.[3] We have previously rejected this very theory. In LeFevre, the Secretary argued that his refusal to- establish a presumption of service connection for certain cancers was not subject to review because it was nonbinding—veterans were still permitted to prove service connection on a case-by-case basis. 66 F.3d at 1197. We rejected that contention, noting that such an action ‘“has an immediate and practical impact' on Vietnam .veterans and their survivors ,.was not ‘abstract, theoretical, or academic,’ ‘touches vital interests of veterans and their Survivors, and ‘sets the standard for shaping the manner in which an important segment’ of the Department’s activities ‘will be done.’” Id. at 1198 (quoting Frozen Food Express v. United States, 351 U.S. 40, 44, 76 S.Ct. 569, 100 L.Ed. 910 (1956)). The same is true of the Manual revisions at issue here. Also, as noted earlier, other circuits have held agency actions that were binding on subordinate agency officials- to be reviewable. See Appalachian Power, 208 F.3d at 1022 (reviewing a policy issued in a guidance document that “EPA officials in the field are bound to apply”); Nat. Res. Def. Council, 643 F.3d at 321 (reviewing a guidance document that “binds EPA regional directors”). As recognized by the majority, the Manual revisions’ impact is extensive: “the VA instructed all claims processors in its 56 regional offices to exclude all Navy personnel who served outside the now-defined ‘inland waterways’ of Vietnam ... from presumptive service connection for diseases or illnesses connected with exposure to Agent Orange.” Maj. Op. 1107. VA, too, “concedes that the impact of its manual changes is -both real and far reaching.” Id, at 1107-08. Even though not binding on the Board, the Manual does bind the front-line benefits adjudicators located in each VA Regional Office (“RO”). See, e.g,, Thun v. Shinseki, 572 F.3d 1366, 1369 (Fed. Cir. 2009). Over 1.3 million claims were decided by the ROs in 2015, yet during that same period only 52,509 appeals-of those decisions were filed before, the Board. Compare Office of Mgmt., U.S. Dep’t of Veterans Affairs, FY 2016 Agency Financial Report 18 (Nov. 15, 2016), https://www.va. gov/finance/docs/afr/2016VAafrFullWeb. pdf, with Bd. of Veterans Appeals, U.S. Dep’t of Veterans Affairs, Annual Report Fiscal Year 2015 (2016) [hereinafter BY A Report], https://www.bva.va.gov/docs/ Chairmans_AnnuaLRpts/BVA2015AR.pdf: Those few veterans who do seek Board review can expect to wait an additional three years between the filing of their appeal and a Board decision. See BVA Report 21. With roughly .96% of cases finally decided by VBA employees bound by the Manual, its provisions constitute the last word for the vast majority of veterans. To say that the Manual does not bind the Board is to dramatically understate its impact on our nation’s veterans. Review of the Manual revisions is essential given the significant “hardship [that] would be incurred ... if we were to forego judicial review.” Coal for Common Sense in Gov’t Procurement v. Sec’y of Veterans Affairs, 464 F.3d 1306, 1316 (Fed. Cir. 2006). . Finally, as the majority here appears to agree, see Maj. Op. 1108-09, DAV’s reliance on the form of the Manual cannot defeat jurisdiction. Nothing about the-statute suggests that a document described in subsection.(a)(2) could not also be subject to subsection (a)(l)’s more demanding requirements. Given the statute’s “goal of broad disclosure” and the Supreme Court’s instructions to construe its exemptions narrowly and exclusively, U.S. Dep’t of Justice v. Tax Analysts, 492 U.S. 136, 151, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989), we should not read new limitations into § 552. Implicit to DAV’s reasoning, in ,this respect, is the notion that § 552(a)(1) and § 552(a)(2) are mutually .exclusive. In other words, DAV instructs that provisions of agency manuals, because described in subsection (a)(2), are therefore not rules of general applicability for purposes of subsection (a)(1). See id. at 1077-78 (“Congress expressly exempted from § 502 challenges to agency actions which fall under § 552(a)(2).”). There is no support for this view. Congress did not in fact “expressly exempt” actions described in § 552(a)(1) from § 552(a)(2). To the contrary, a range of content commonly found in staff manuals—such as descriptions of an agency’s organization, rules of procedure, and, importantly, generally applicable policies and interpretations—is expressly described in subsection (a)(1) despite also arguably being covered by the reference to manuals in subsection (a)(2)(C). Even if subsections (a)(1) and (a)(2) could be regarded as mutually exclusive, the Manual at issue here is not merely an “administrative staff manual”: the Manual provides the rules of decision to be applied by agency adjudicators in responding to veterans’ benefits claims. The revisions challenged here go well beyond “administrative” directions. They announce “interpretations of general applicability” subject to § 652(a)(l)’s publication requirement and, accordingly, to our review under § 502. Cases from the Supreme Court, other courts of appeals, and our own court have held that similar agency pronouncements fall within the scope of § 552(a)(1) despite appearing within agency manuals. For example, in Morton v. Ruiz, 415 U.S. 199, 232-86, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974), the Supreme Court held that provisions of the Indian Affairs Manual should have been published in the Federal Register pursuant to § 552(a)(1)(D) and the agency’s own internal publication rules. Likewise, in NI Industries, Inc. v. United States, 841 F.2d 1104, 1107 (Fed. Cir. 1988), this Court held that contracting provisions located in an Army Standard Operating Procedures document were subject to § 552(a)(l)(D)’s publication requirement. See also Linoz v. Heckler, 800 F.2d 871, 878 n.11 (9th Cir. 1986) (finding a ■provision of the Medicare Carrier’s Manual to be a generally applicable interpretation subject to § 552(a)(1)(D) publication); Anderson, 550 F.2d at 461-63 (same with respect to the Food Stamp Certification Handbook). The majority’s approach is also inconsistent with our own prior cases finding similar agency actions within the scope of § 502 and thus reviewable. Unlike DAV, each of these cases analyzed the substance and effect of the agency action, rather than its form. Most recently, in Snyder v. Secretary of Veterans Affairs, 858 F.3d 1410, 1413 (Fed. Cir. 2017), we found reviewable an opinion of the VA General Counsel relating to attorney’s fees because it “announces a rule that readily falls within the broad category of rules and interpretations encompassed by § 552(a)(1)(B).” In Military Order of the Purple Heart v. Secretary of Veterans Affairs, 580 F.3d 1293, 1296 (Fed. Cir. 2009), we found jurisdiction to review a VA letter changing the procedures for reviewing certain benefits awards; Our determination turned not on the form of the letter but on the fact that it “affects the veteran’s substantive as well as procedural rights, and is ‘a change in existing law or policy which affects individual rights and obligations.’ ” Id. (quoting Animal Legal Def. Fund v. Quigg, 932 F.2d 920, 927 (Fed. Cir. 1991)). We found another VA letter reviewable in Coalition for Common Sense, 464 F.3d at 1316-18, by focusing on its effect within the agency and on outside parties and tribunals, not on its form. Finally, as described above, in LeFevre, 66 F.3d at 1196-98, we found jurisdiction to review the Secretary’s decision to exclude certain cancers from the presumption of service connection by looking to its effects on the veterans suffering from those diseases. [[Image here]] The provisions of agency manuals' and similar documents have been previously held subject to preenforcement review. The DAV decision and the majority decision here represent an unwarranted narrowing of our jurisdiction. I respectfully suggest the DAY case was wrongly decid- . Inland waterways are fresh water rivers, streams, and canals, and similar waterways. Because these waterways are distinct from ocean waters and related coastal features, service on these waterways is service in [Vietnam]. VA considers inland waterways to end at their mouth or junction to other offshore water features, as described below. For rivers and other waterways ending on the coastline, the end of the inland waterway will be determined by drawing straight lines across the opening in the landmass leading to the open ocean or other offshore water feature, such, as a bay or inlet. For the Mekong and, other rivers with .prominent deltas, the end of the inland waterway will be determined by drawing a straight line across each opening in the landmass leading to the open ocean.” Id. . Section 552(a) provides, in relevant part: Each agency shall make available to the public information as follows: (1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public— [[Image here]] (D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; [[Image here]] (2) Each agency, in accordance with published rules, shall make available for public inspection in an electronic format— [[Image here]] (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; (C) administrative staff manuals and instructions to staff that affect a member of the public; [[Image here]] (3)' (A) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person. . As the majority notes, the Manual is "not binding on anyone other than the VBA [Veterans Benefits Administration] employees" and, in particular, does not bind the Board of Veterans Appeals (“Board”). Maj. Op. 1105; see also Carter v. Cleland, 643 F.2d 1, 5 (D.C. Cir. 1980) (noting the Manual’s binding effect on VA adjudicators); Office of Gen. Counsel, U.S. Dep’t of Veterans Affairs, Op. Prec. 7-92, Applicability of VA Manual M21-1, Part 1, Paragraph 50.45, 1992 WL 1200482, at *2 cmt. 4 (Mar. 17, 1992) (same).