**DOW JONES & COMPANY, INC., Plaintiff,**

v.

**GENERAL SERVICES ADMINISTRATION, et al., Defendants.**

**Civ. A. No. 88–0686.**

United States District Court, District of Columbia.

June 7, 1989.

---

Paul Blankenstein with whom Theodore J. Boutrous, Jr. and Larry L. Simms were on the brief, Gibson, Dunn & Crutcher, Washington, D.C., for plaintiff.

Nathan Dodell, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John D. Bates, Asst. U.S. Atty., were on the brief, Washington, D.C., for defendants.

## OPINION

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

The Wall Street Journal filed this Freedom of Information Act ("FOIA") suit because the General Services Administration ("GSA") denied it access to a list of the business partners of Terence C. Golden, a former Administrator of GSA. This list was prepared by Mr. Golden's personal accountant, at Mr. Golden's own expense, in order to implement a recusal system that would ensure that Mr. Golden did not participate in any transactions creating a conflict of interest or the appearance of a conflict during his tenure as Administrator of GSA. Mr. Golden accepted the position of Administrator of GSA on the condition that the list would remain his personal property, and that access to the list would be confined to those agency officials who needed to view the list in order to implement the recusal system. During Mr. Golden's tenure at GSA, the list was kept in a locked safe to which only Mr. Golden, his Chief of Staff, and secretary had access.

Defendants denied the Wall Street Journal's FOIA request for the list of Mr. Golden's partners on the ground that the list is not an agency record and, therefore, is not subject to the requirements of the FOIA. Even assuming the Court were to find that the list is an "agency record" within the meaning of the FOIA, defendants maintain that they still would be under no obligation to disclose it to plaintiff because it is covered by FOIA Exemptions 4 (confidential business information) and 6 (unwarranted invasion of personal privacy).

Now before the Court are the parties' cross-motions for summary judgment. Upon consideration of both parties' motions, the accompanying affidavits, the supporting and opposing legal memoranda, and the underlying law, the Court concludes that the list of Mr. Golden's partners is not an "agency record" and, therefore, is not within the FOIA's reach. Accordingly, the Court will grant defendants' motion for summary judgment, and will deny plaintiff's motion.

## BACKGROUND

Concerns expressed at Mr. Golden's confirmation hearings gave rise to the list at issue. During these hearings, much time was spent examining whether Mr. Golden's financial interests in residential real estate partnerships established by his former employer, Trammel Crow Residential Companies, might generate an actual or apparent conflict of interest as he performed his duties at GSA. Because of the "essentially static nature of his real estate holdings," it was determined that a blind trust would be ineffective in guarding against such conflicts. Accordingly, alternative options were explored at Mr. Golden's confirmation hearings.[1]

In lieu of a blind trust, Mr. Golden proposed a recusal system that would allow for the screening of matters requiring his attention prior to his involvement by comparing these matters against a list of his partners. The list would be prepared by his personal accountant at his own expense.[2] Mr. Golden proposed this recusal system with the caveat that the list would remain at all times his personal property, and that the confidentiality of the information on the list would be preserved. During the hearings, no one objected to Mr. Golden's requirement that the list remain a confidential, personal record.[3] In fact, the Director of the Office of Ethics described the list of Golden's partners as a "personal file."[4] Moreover, as one measure for ensuring the list's confidentiality, an express agreement was reached between the Director of the Office of Government Ethics and Mr. Golden requiring him to include on his financial disclosure form the names of the partnerships to which he belonged, but not the names of the individuals who were his partners.[5]

In practice, access to the list was very restricted. The list was never circulated among GSA officials or duplicated.[6] Throughout Mr. Golden's tenure with GSA, the list was kept in a locked safe in his office to which only he and two of his employees had access—Ms. Susan F. Brita, his Chief of Staff, and his secretary.[7] Ms. Brita was the only person to whom Mr. Golden personally disclosed the list;[8] she was the person primarily responsible for the implementation of the recusal system.[9] Mr. Golden did, however, advise GSA's Deputy Administrator as well as its General Counsel and Director and its Office of Ethics that they would be permitted to obtain access to the list "on a need to know basis." Likewise, Mr. Golden permitted the Office of Government Ethics to obtain access to the list on a "need to know basis."[10]

The Deputy Administrator of GSA was the only GSA official to ever request access to the list; he requested such access once or twice soon after Mr. Golden became Administrator.[11] Representatives of the

---

1. *Declaration of Terence C. Golden* (hereinafter "Golden Declaration"), Exhibit 1 at 7.

2. *Golden Declaration* at ¶ 10.

3. *Declaration of Margaret P. Crenshaw* at ¶¶ 8, 10; *Declaration of Donald E. Campbell* at ¶ 6.

4. *Golden Declaration,* Exhibit 2.

5. *Golden Declaration,* Exhibit 2.

6. *Golden Declaration* at ¶ 14; *Brita Declaration* at ¶ 9.

7. *Golden Declaration* at ¶ 16; *Brita Declaration* at ¶ 9.

8. *Golden Declaration* at ¶ 19.

9. *Golden Declaration* at ¶ 17; *Brita Declaration* at ¶ 7.

10. *Golden Declaration* at ¶ 19.

11. *Brita Declaration* at ¶ 9.

38

Office of Government Ethics asked to see the list on several occasions.[12] Ms. Brita observed that these officials did nothing more than flip through the list "without appear[ing] to dwell on any particular name."[13]

Since the filing of this suit, Mr. Golden has resigned from his position at GSA, and has taken the list of his partners with him. The parties to this suit have entered into a stipulation, however, which provides that Mr. Golden shall not destroy or alter the list until the Court resolves this suit on the merits. In addition, the stipulation provides that Mr. Golden must deliver the list to GSA should the Court determine that the list is an "agency record" under the FOIA.

## THE LIST OF MR. GOLDEN'S PART-NERS IS A PERSONAL RECORD AND NOT AN AGENCY RECORD SUBJECT TO THE REQUIREMENTS OF THE FOIA.

■ Under the FOIA, "[t]he requirement that materials sought by a private party be 'agency records' is jurisdictional." *Bureau of National Affairs v. United States Dep't of Justice*, 742 F.2d 1484, 1488 (D.C.Cir. 1984).[14] "'The Freedom of Information Act, for all its attention to the treatment of "agency records," never defines the crucial phrase.' The legislative history of the FOIA is similarly unilluminating." *Tax Analysts v. United States Dep't of Justice*, 845 F.2d 1060, 1067 (D.C.Cir.1988), *cert. granted*, —— U.S. ——, 109 S.Ct. 781, 102 L.Ed.2d 773 (1989) (quoting *McGehee v. CIA*, 697 F.2d 1095, 1106, *aff'd in part and*

*vacated in part on other grounds*, 711 F.2d 1076 (D.C.Cir.1983)).

The Supreme Court has examined the meaning of the phrase "agency record" as used in the FOIA on at least two occasions. On both of these occasions, the Supreme Court stressed "that an agency must first either create or obtain a record as a prerequisite to it becoming an 'agency record' within the meaning of the FOIA." *Forsham v. Harris*, 445 U.S. 169, 182, 100 S.Ct. 977, 985, 63 L.Ed.2d 293 (1980); *see also Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150–55, 100 S.Ct. 960, 968–71, 63 L.Ed.2d 267 (1980).

■ In preparing the list, Mr. Golden's accountant was acting on as Mr. Golden's agent. As such, the creation of the list can be attributed to Mr. Golden. The creation of the list cannot, however, be attributed to GSA. When Mr. Golden asked his accountant to prepare the list, he was not acting at the direction of GSA, but instead pursuant to an agreement he entered into with the Committee before whom he was confirmed. Because the creation of the list cannot be attributed to GSA,[15] it is necessary to determine whether GSA ever obtained the list at issue.

■ "While the Supreme Court has expressly declined 'to categorize what agency conduct is necessary to support a finding that [the agency] has "obtained" documents,' at the least, the agency cannot have 'obtained' documents until it has possession or control over them." *Wolfe v.*

12. *Brita Declaration* at 12.

13. *Brita Declaration* at ¶ 12.

14. A court's jurisdiction to grant relief in a FOIA suit hinges on a FOIA plaintiff making a three-part showing. "Under 5 U.S.C. § 552(a)(4)(B) [a FOIA plaintiff must make] a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980).

15. It should be noted that Ms. Brita subsequently had the list alphabetized because Mr. Golden did not organize the list in any particular order. *Brita Declaration* at ¶ 8. Ms. Brita's causing the list to be alphabetized has no bearing on the outcome of this case because the alphabetized list is nothing more than a work aid created "on her own initiative for her own personal convenience." *American Federation of Government Employees, Local 2782 v. United States Dep't of Commerce*, 632 F.Supp. 1272, 1277 (D.D.C.1986). "[P]ersonal notes which are not intended for distribution through normal agency channels and which cannot be said to be within the 'control or dominion' of an agency are ordinarily considered to be beyond the scope of FOIA." *Id.* (citing *British Airports Authority v. Civil Aeronautics Board*, 531 F.Supp. 408, 415–16 (D.D.C.1982); *Kalmin v. Department of the Navy*, 605 F.Supp. 1492, 1495 (D.D.C.1985)).

*Department of Health and Human Services*, 711 F.2d 1077, 1079 (D.C.Cir.1983) (quoting *Forsham*, 445 U.S. at 185, 100 S.Ct. at 987).[16] An agency does not possess a document by virtue of its location within the physical confines of the agency; an agency must also exercise some control over the document. *Id.* at 1080 (citing *Kissinger*, 445 U.S. at 157, 100 S.Ct. at 972).

In determining whether an agency has sufficient "control" over a document to make it an "agency record," there are several factors that should be taken into account. These factors are:

(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.

*Tax Analysts*, 845 F.2d at 1069 (quoting *Lindsey v. Bureau of Prisons*, 736 F.2d 1462, 1465 (11th Cir.), *vacated on other grounds*, 469 U.S. 1082, 105 S.Ct. 584, 83 L.Ed.2d 695 (1984)).

The application of the above factors to Mr. Golden's list of partners ineluctably leads to the conclusion that GSA did not possess sufficient control over the list for it to be considered an "agency record." It is clear that Mr. Golden did not intend to give up his control over the list. In fact, Mr. Golden's maintenance of the list in a locked safe and his granting of very limited access are indicative of his intention to retain close personal control over the list at all times. Aside from Ms. Brita, who had primary responsibility for implementing the recusal system, the GSA's Deputy Administrator, who reviewed the list on one or two occasions, was the only GSA official who ever saw the list. Finally, the tight reign exercised by Golden over the list prevented the list from ever becoming a part of GSA's files or within GSA's dominion.

For the foregoing reasons, the Court concludes that Terence C. Golden's list of partners is not an agency record and, therefore, the Court lacks jurisdiction to grant plaintiff the relief it is seeking. Accordingly, the Court will issue an Order of even date herewith granting defendants their motion for summary judgment.

**16.** Plaintiff argues that the Court should not focus its analysis on whether GSA has possession or control over the list, but instead on GSA's interest in the list and the extent to which GSA uses the list to conduct its business because the list was created by an employee of GSA. *Motion of Dow Jones & Company, Inc. For Summary Judgment* at 16. To support its argument, plaintiff relies upon the language of the Court of Appeals for this Circuit in *Bureau of National Affairs v. United States Department of Justice* providing that "where documents are created by an agency employee and located within the agency, use of the document becomes more important in determining the status of the document under FOIA." 742 F.2d 1484, 1490 (D.C. Cir.1984). In that case, however, the Court of Appeals also explained that "[u]se alone, however, is not dispositive; the other factors mentioned in *Kissinger* must also be considered: whether the document is in the agency's control, was generated within the agency, and has been placed in the agency's files." *Id.* at 1492. Because the list at issue was not prepared during the course or scope of Mr. Golden's employment with GSA or at the agency's expense, and it is undisputed that Mr. Golden received assurances that the list was his personal property, the Court finds that it is more appropriate to focus on whether the agency ever acquired possession or control over the list rather than GSA's use of the list.