TAX ANALYSTS, Plaintiff,

v.

UNITED STATES DEPARTMENT
OF JUSTICE, Defendant,

and

West Publishing Company,
Defendant–Intervenor.

No. 94–0043 (GK).

United States District Court,
District of Columbia.

Jan. 16, 1996.

William Dobrovir, Culpepper, VA, for plaintiff.

Elizabeth Pugh, Susan Lennon, U.S. Department of Justice, Washington, DC, Burt Braverman, T. Scott Thompson, Washington, DC, for defendant.

## MEMORANDUM OPINION

KESSLER, District Judge.

This action is brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff is a nonprofit organization that publishes, in printed and electronic form, news and documents about federal, state, and local taxation, including summaries and full texts of tax decisions by federal courts. Plaintiff seeks to compel Defendant Department of Justice ("DOJ") to disclose its Justice Retrieval and Inquiry System ("JURIS"), an electronic legal research database. The issue in this case is whether JURIS is an "agency record" subject to disclosure under FOIA.

### I. Procedural Background

On November 22, 1993, Plaintiff submitted a FOIA request to DOJ for the JURIS database. Two weeks later, on December 2, 1993, DOJ denied Plaintiff's request for the portion of the JURIS database provided by West.[1] The DOJ claimed that the West-provided part of JURIS was not an "agency record," and therefore not subject to disclosure under FOIA. Moreover, DOJ argued that even if the West-provided part of JURIS was an agency record, it was exempt from disclosure pursuant to Exemption 4 of FOIA, 5 U.S.C. Section 552(b)(4), because it is confidential commercial information.[2]

On December 8, 1993, Plaintiff appealed the denial of its FOIA request to the DOJ's Office of Information and Privacy. When

---

**1.** As discussed in detail below, 80% of the JURIS database is information provided to DOJ by West; the remaining 20% is information provided by government agencies other than DOJ. Defendant DOJ does not contest the FOIA request for non-West-provided data, and has been processing that request since it was made.

**2.** Section 552(b)(4) states that:

(b) This section does not apply to matters that are—

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

DOJ failed to rule on the appeal by the statutory due date of January 10, 1994,[3] Plaintiff brought this action in the U.S. District Court. West Publishing Company ("West") intervened as of right, pursuant to Fed.R.Civ.P. 24(a) & (b) because it had a substantial interest in the material being sought by Plaintiff.

On February 14, 1994, DOJ filed a Partial Motion to Dismiss for lack of subject matter jurisdiction.[4] On the same day, Defendant–Intervenor West also filed a Motion to Dismiss for lack of subject matter jurisdiction.

On May 27, 1994, Plaintiff filed a Motion for Partial Summary Judgment, requesting that the Court order DOJ to produce portions of the JURIS system which were contributed to JURIS by the Departments of Health and Human Services, Education and the Air Force. On August 11, 1994, DOJ filed a Motion to Dismiss, or in the Alternative, For Stay of Proceedings. On September 8, 1994 the Court granted DOJ's motion to Stay Proceedings until a ruling on the Motions of Defendant DOJ and West to Dismiss (both filed February 14, 1994).

Thus, this matter is before the Court upon DOJ's Partial Motion to Dismiss and West's Motion to Dismiss.

## II. Statement of Facts

JURIS is an electronic legal research system created and maintained by DOJ.[5] It is an electronic depository of federal cases, regulations and digest material, through which DOJ attorneys conduct research for their cases. JURIS also provides citating services

that allow subscribers to "shepardize" their cases, i.e., to research their legal history. The system was developed by DOJ in the early 1970's, became operational in 1974, and expanded in 1979 to include other executive departments. JURIS is not available to the general public; access is limited to federal and state government users who subscribe through a reimbursement agreement between the subscribing agency and the DOJ.

Until 1983, the data in JURIS was collected, organized, and "inputted" by DOJ and other federal agencies. Beginning in 1983, however, DOJ contracted with West to provide 80% of the information in JURIS. The most recent contract between DOJ and West—the one central to this case—ran from 1988 to 1993 (the "1988 contract" or "contract"). Under that contract, West collected, organized and computer-formatted cases, opinions and digests to make them ready for use on JURIS.[6]

## III. The Freedom of Information Act

Under the FOIA, a federal agency must make available for public inspection and copying its opinions, statements of policy, interpretations, staff manuals and instructions that are not published in the Federal Register, 5 U.S.C. § 552(a)(2). In addition, § 552(a)(3) requires that an agency "upon any request for records which . . . reasonably describes such records" to make such records "promptly available to any person."[7]

■ A district court has jurisdiction to enjoin an agency from withholding agency

---

**3.** DOJ failed to rule by the statutory date because of the FOIA request backlog.

**4.** The Motion to Dismiss was "partial" because DOJ seeks to block Plaintiff's access only to West-provided data, not data supplied by government agencies.

**5.** DOJ stopped using JURIS in 1993, when it entered into a contract with West to use Westlaw as its legal database.

**6.** The West-provided data on JURIS includes: decisions of the United States Supreme Court, Courts of Appeal, District Courts, Court of Federal Claims, Tax Court, Bankruptcy Courts, the District of Columbia Court of Appeals, the U.S. Merit Systems Protection Board, the Board of Contract Appeals, U.S. Tax Court memorandum

decisions, the IRS Cumulative Bulletin, Tax International Acts, IRS Written Determinations, IRS News Releases, IRS General Counsel Memoranda, IRS Actions on Decisions, IRS Technical Memoranda, and West-copyrighted digests *Federal Rules Decisions* and *Military Justice Reporter.*

**7.** 5 U.S.C. § 552(a)(3) specifically provides:

Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

records and to order the production of any agency records improperly withheld from a complainant. § 552(a)(4)(B). The court has jurisdiction only if the plaintiff establishes that an agency has (1) improperly (2) withheld (3) agency records. *Kissinger v. Reporters Committee for Freedom of Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980). Unless all three of these criteria are met, a district court lacks jurisdiction to compel an agency to comply with FOIA. In this case, the first two jurisdictional prongs of the *Kissinger* test are not at issue. Rather, Defendants argue that this Court lacks jurisdiction because the JURIS is not an "agency record" under controlling law.

## IV. "Agency Records"

### A. The Test

■ The FOIA does not define "agency record," and "[t]he legislative history is similarly unilluminating." *Tax Analysts v. United States Department of Justice*, 845 F.2d 1060, 1067 (D.C.Cir.1988, *aff'd* 492 U.S. 136, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989). Although the statute fails to define the term, the Supreme Court in affirming the Court of Appeals decision in *Tax Analysts*, articulated a two-part test to determine what constitutes an "agency record" under the FOIA: "agency records" are documents which are (1) either created or obtained by an agency, and (2) under agency control at the time of the FOIA request. *United States Department of Justice v. Tax Analysts*, 492 U.S. 136, 144–145, 109 S.Ct. 2841, 2848, 106 L.Ed.2d 112 (1989); *see also* U.S. Department of Justice, *Freedom of Information Act Guide & Privacy Act Overview*, September 1994 Ed., at 13. Neither party disputes that the West-provided material was "created or obtained" by DOJ during the time in question. The issue is whether the West-provided data in JURIS was under the "control" of DOJ when Plaintiff made its FOIA request. If DOJ "controlled" the data, it is an agency record subject to FOIA.

In *Tax Analysts*, the Supreme Court gave only general guidance to what it meant by "control." The Court said that "[b]y control we mean that the materials have come into the agency's possession in the legitimate conduct of its official duties." *Tax Analysts*, 492 U.S. at 144, 109 S.Ct. at 2848. Further, the Court said that "[t]he control inquiry focuses on an agency's possession of the requested materials, not on its power to alter the content of the material it receives." *Id.* at 147, 109 S.Ct. at 2849.

■ As might be expected, the parties take this language to mean opposite things. Plaintiff argues that "control" is determined foursquare by "possession," and since DOJ undoubtedly "possessed" the data at the time of the FOIA request, DOJ controlled the data. Defendants, in contrast, argue that the Supreme Court did not mean that "possession" and "control" were synonymous, but simply that "possession" should be one of many factors the court considers in its control inquiry.

Plaintiff correctly points out that the Supreme Court in *Tax Analysts* directed the control inquiry to "possession." But the Court stated only that the "inquiry focuses on an agency's possession," *id.* at 147, 109 S.Ct. at 2849, not that possession alone determined control. To hold that control is synonymous with possession contradicts the Supreme Court's ruling in *Kissinger v. Reporters Committee for Freedom of Press*, 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980), upon which *Tax Analysts* itself was based, that: "We simply decline to hold that physical location of the [documents at issue] renders them 'agency records.'" *Id.*, 492 U.S. at 157, 109 S.Ct. at 2847.[8]

Moreover, the Supreme Court in *Tax Analysts* did not establish a new test for determining what was an "agency record" under FOIA. The Court itself acknowledged in *Tax Analysts* that it did not "write on a clean slate." *Id.* at 142, 109 S.Ct. at 2847. Rather, it clarified the standard already in place and applied factors that courts in this Circuit, and the Supreme Court itself, had been applying

---

8. While it is true that the documents in *Kissinger* were personal notes of telephone conversations, the reasoning of the Supreme Court is consistent with the principle that physical possession alone does not determine control.

in earlier cases.[9] Plaintiff's assertion, therefore, that this Court may simply "ignore" cases decided before *Tax Analysts,* Pl.Opp. at 14, is simply incorrect.

The courts of this Circuit have looked to a number of factors to answer the control question. *See e.g. Goland v. CIA,* 607 F.2d 339, 347 (D.C.Cir.1979) (rejecting plaintiff's argument that agency's possession of a document *per se* dictates document's status as an "agency record," and holding instead that crucial question was whether document was "subject to the free disposition of the agency"), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *Paisley v. CIA,* 712 F.2d 686, 692–93 (D.C.Cir.1983) (same); *Katz v. National Archives and Records Administration,* 68 F.3d 1438, 1442 (D.C.Cir. 1005) (holding that National Archives' possession of President Kennedy's autopsy photographs did not make them agency records because all agencies involved in the creation of the photographs treated them as personal property of the Kennedy estate); *Washington Post v. United States Dep't of Defense,* 766 F.Supp. 1, 16–17 (D.D.C.1991) (citing *Goland* to hold that transcript transferred by Congress to agency for limited purpose did not become agency record because document was not subject to free disposition of agency); *see also Hamrick v. Department of Navy,* No. 90–0283, 1992 WL 739887, 1992 U.S.Dist. LEXIS 13151 (D.D.C. Aug. 28, 1992) (notebooks created by agency employee were not agency records because employee, not agency, created, maintained and possessed the document).

In *Dow Jones & Company, Inc. v. General Services Administration,* 714 F.Supp. 35 (D.D.C.1989), decided just before *Tax Analysts,* the District Court discussed the "control" issue in considerable depth, holding that the following factors determined whether an agency "controlled" a document:

(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use

and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.

*Id.* at 39.[10]

Taken together, these decisions of the Supreme Court, Court of Appeals and District Courts contain the clear teaching that "control" is not determined solely by possession. Rather, the question is whether, considering all of the circumstances of the case including, of course, physical possession, the records at issue are "subject to the free disposition of the agency." *Goland,* 607 F.2d at 347.

## B. Application of the Test

■ It is undisputed that DOJ physically "possessed" the West-provided data at the time of the FOIA request. The question is whether DOJ could "use and dispose of the [data] as it [saw] fit." *Dow Jones,* 714 F.Supp. at 39. DOJ argues that it could not freely dispose of the West-provided data because the 1988 contract significantly restricted how it could use, transfer and/or dispose of the data. The argument centers upon two provisions of the 1988 contract, which read as follows:

*H–6—BASIC DATA LICENSE*

A. i. WEST grants to DOJ during the term of this agreement the nonexclusive, nontransferable, irrevocable right to include the Data supplied to DOJ hereunder pursuant to Section C and all other information and materials supplied in accordance with Section C in JURIS; provided, however, that *those with the access to Data and Information shall in all respects treat them as the proprietary information of West* in accordance with all procedures reasonably necessary to protect WEST's proprietary rights in

---

**9.** The Supreme Court acknowledged as much in *Tax Analysts* when it cited approvingly two of its earlier opinions: "Two requirements emerge from *Kissinger* [445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980)] and *Forsham* [445 U.S. 169, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980)], each of which must be satisfied for requested materials

to qualify as 'agency records.'" *Tax Analysts,* 492 U.S. at 144, 109 S.Ct. at 2848.

**10.** The District Court formulated this test based on our Court of Appeals decision in *Tax Analysts. See Tax Analysts,* 845 F.2d at 1069.

the Data and Information. In the event this contract is terminated in part, this license continues for the remaining portion of the contract.

ii. All JURIS Users shall treat such Data and Information in all respects as such Data and Information are required to be treated in accordance herewith. DOJ shall include the terms, conditions and procedures relative to protecting proprietary and/or confidential information in Sections H–6, H–7, H–8 and H–9 of this agreement in JURIS User Agreements.

B. WEST grants to Authorized JURIS Users and their employees a limited, nonexclusive, nontransferable license during the term of this agreement to use Data copyrighted (or copyrightable) by West, and Contributors, and Information accessed through JURIS in performance of their professional work. Except for the inclusion of data and information in JURIS (and except as provided in Section H–7.B), *any storage, reproduction, transmission, or transfer for consideration of any portion of the information, the data, or the data base is strictly prohibited.* DOJ represents and warrants that Data and Information will be made available through JURIS pursuant to JURIS User Agreements.

## H–7—OWNERSHIP AND DISSEMINATION OF THE LICENSED DATA AND INFORMATION

A. *WEST and Contributors shall remain the exclusive owners of all right, title and interest in the Data Base, the Data licensed hereunder, the Information and all copyrights (and renewals thereof) heretofore or hereafter secured therein. All publication, dissemination and other rights in the Data Base, the Data and the Information licensed hereunder are reserved to WEST and Contributors in* all languages, formats and throughout the world for the sole and exclusive use or any other disposition by WEST and Contributors or their assignees or grantees at any time and from time to time without any obligation or liability to any User.

B. Users *shall not make any printout or other tangible form of retrieved Data available to any person other than an employee of a User without first obtaining a written agreement from such person* not to further disseminate such material. In the event a User is required to produce JURIS printouts containing Data and Information pursuant to a court order or under a controlling legal precedent in a Freedom of Information Act action, the User may do so provided that Section [H–]8 hereof is complied with.

Contract at 28, 69 (emphasis added).

DOJ argues that the terms of Sections H–6 and H–7 explicitly prohibit:

1. use of the West-provided data outside of the JURIS system;

2. use of the West-provided data by anyone other than authorized JURIS users;

3. transferring or assigning West-provided data;

4. storing, reproducing, transmitting or transferring for consideration any portion of the West-provided data;

5. distributing by JURIS users any printouts or other tangible forms of West-provided data without first obtaining a written agreement from such person not to further disseminate the West-provided data; and

6. further use of the West-provided data if the contract is terminated.

The gravamen of DOJ's argument is that it did not "control" the West-provided data because it was contractually prohibited from doing so; sections H–6 and H–7 preclude it from using, transferring and/or disposing of the data as it wants to. DOJ personnel could retrieve, copy, store and disseminate the data *only* under the terms and conditions of the governing contract.

Plaintiff counters with two arguments. First, Plaintiff attacks the validity of the 1988 contract in its entirety, arguing that the licensing provisions are "nothing more than an attempt by West to create a private copyright in public domain data in derogation of

the Copyright Act." Pl.Opp. at 6. Plaintiff argues at considerable length that West does not "own" the data at issue, and "without any ownership interest, West has nothing to 'license.'" *Id.* Second, Plaintiff argues that even if the licensing provisions of the 1988 contract are valid, they apply only to the so-called "proprietary" data in the contract.

■ As to Plaintiff's first argument—that the entire 1988 contract is invalid—it is incorrect that West is claiming a "property interest" in the case law of the U.S. Courts and administrative regulations of government agencies. What West is claiming is an ownership interest in "the electronic products it has created," DOJ Motion at 9, namely, the *electronically formatted* case law, administrative decisions and other material that it provided to DOJ pursuant to the 1988 agreement. Making data "readable" for a software program (such as JURIS) takes considerable time and effort. The text of every opinion, administrative ruling, etc., must be formatted consistent with JURIS conventions, including text and file restrictions, paragraph indentations, centering of headings, and replacement of JURIS-unacceptable characters with an equivalent word or abbreviation. Plaintiff offers no support for its contention that West's contribution was solely "mechanical drudge- or machine-work." Pl.Opp. at 7.

And as Defendants properly point out, the public may still obtain public-domain material—i.e., non-West formatted material—from the government directly for nominal copying costs (e.g. through the clerk's office in a courthouse). The public may also obtain this material for free from libraries. In any case, Defendants correctly argue that the public does not have a right to the electronic format that West has created (at considerable expense) pursuant to its contract with DOJ.

West has not attempted to license "public domain" data, but rather its *electronic compilation* of public domain data, which it is legally entitled to do. *See West Publishing Company v. Mead Data Central, Inc.* 616 F.Supp. 1571, 1577 (D.Minn.1985) (holding that West database is copyrightable because "while the data lies in the public sphere, the arrangement and pagination of this public material reflects the skill, discretion and effort of the person crafting the arrangement."), *aff'd* 799 F.2d 1219 (8th Cir.1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987); *see also Callaghan v. Myers,* 128 U.S. 617, 649, 9 S.Ct. 177, 185, 32 L.Ed. 547 (1888) ("such work of the reporter, which may be the lawful subject of copyright, comprehends ..: that order of arrangement of the cases, the division of the reports into volumes, the numbering and paging of volumes ...") Thus, Plaintiff has failed to establish that the 1988 contract is invalid, and therefore that basis for arguing that DOJ "controlled" the West-provided data must fail.

■ Plaintiff's second argument focuses specifically on the language of the 1988 contract, which divides the data into two distinct categories, "proprietary" and "nonproprietary," *see* Contract at 28, 69. Plaintiff argues that West "owns" and controls only the data termed "proprietary." Thus, Plaintiff concludes, while DOJ may not control the "proprietary" data, it certainly controls the "non-proprietary" data, making that data an agency record, subject to disclosure under FOIA.

Defendants DOJ and West contest this, arguing that the terms "proprietary" and "nonproprietary" were never intended to classify the data or delineate any "ownership" interest, and that the history of the 1988 contract corroborates this.

In 1987, DOJ issued two Requests for Proposal (RFPs), one for West's copyrighted digests, the other for the text of judicial and administrative decisions. The first RFP was called "proprietary" because it solicited West's copyrighted state and federal digests and two West Reporters, *Federal Rules Decisions,* and *Military Justice Reporter,* that only West could provide. The second RFP was called "nonproprietary" because it solicited electronic copies of judicial and administrative decisions in JURIS-ready format, which a number of companies could provide.

West won both RFPs, and a single contract award was made that combined the specifications of both RFPs. Because the contract combined two "statements of work"

(the proprietary and non-proprietary databases), the parties continued to refer to them as "proprietary" and "nonproprietary," though that terminology did not describe ownership interests. In effect, Defendants argue that the terms "proprietary" and "nonproprietary" were merely shorthand terms for the separate databases covered in the contract. Defendants contend that "[b]oth parties to the Contract understood that the Contract contained two statements of work and that the [ownership and license] provisions applied to the entire Contract." DOJ Motion at 5.

The question is whether the licensing provisions apply to the entire contract or just to the so-called "proprietary" data. If the West license applies only to "proprietary" data, then DOJ clearly controlled the "non-proprietary" data and it is fully disclosable as an "agency record" under FOIA.

 Although this is a question of fact, this Court may resolve factual disputes to determine the proper disposition of the 12(b)(1) motion. *Herbert v. National Academy of Sciences*, 974 F.2d 192, 193, 198 n. 6 (D.C.Cir.1992); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C.Cir.1987); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 213. This Court is aware, however, that when it resolves a question of fact, "it must bear in mind what procedural protections could be required to assure that a full airing of the facts pertinent to a decision on the jurisdiction question may be given to all parties." *Herbert*, 974 F.2d at 198. Given the fact that the parties have fully briefed this issue in their Motions, Opposition and Replies, however, and even submitted supplemental briefs, the Court is confident that there has been a "full airing" of the facts necessary for a decision.

The contract is without doubt divided into sections termed "nonproprietary," Contract at 28 ("STATEMENT OF WORK: I. Non–Proprietary Data Bases") and "proprietary," Contract at 68 ("STATEMENT OF WORK: II. Proprietary Data Bases"). Unfortunately, both sections are also titled "SECTION C." Finally, the licensing provision at issue in this case, section H–6 ("Basic Data License"), applies to "the Data supplied to DOJ hereunder *pursuant to Section C* and all other information and materials supplied *in accordance with Section C.*" Contract at 118. That the contract is not a model of precision states the obvious. Does section H–6 apply to *both* "Section C's" or only to the "Proprietary Data Bases" Section C?

Plaintiff argues that the language of the contract "can only apply to the second, 'proprietary' data section C." Pl.Supp.Mem. at 2. Plaintiff has little to support that reading, however, except for the somewhat conclusory assertion that because section H–6 contains the word "proprietary" in a few places, *see* Contract, section H–6(A), it must apply only to the "proprietary" Section C. In response, DOJ argues that both parties "understood that the Contract contained two statements of work and that the remaining sections, including Section H's ownership and licensing provisions, applied to the entire contract." DOJ Reply at 5.

The Court agrees with DOJ's reading of the contract. The specific references to "proprietary" in section H–6 do not appear to relate to either the "proprietary" Section C or the "nonproprietary" Section C. Section H–6 says only that JURIS users must treat *the data* as "proprietary," that necessary procedures must be used to protect West's "proprietary" rights, and that DOJ must protect "proprietary and/or confidential information." Contract, section H–6(A). That hardly demonstrates that the licensing provisions apply only to "proprietary" Section C.

Moreover, other parts of the contract demonstrate that section H–6 does apply to the entire database. Significantly, section H–7 of the contract, "Ownership and Dissemination of Licensed Data,"—which directly follows H–6—does not distinguish between "proprietary" and "non-proprietary" data, but instead applies to the entire database provided by West. "WEST and Contributors shall remain the exclusive owners of all right, title and interest in the Data Base, the Data liscensed hereunder." Contract, section H–7(A).

Plaintiff's only evidence for its reading of the contract is the use of the word "proprietary" in Section H–6. However poorly draft-

ed the contract may be, a fair and reasonable reading of the document compels the conclusion that the Section H–6 licensing provisions apply to the entire contract. Thus, the Court rejects Plaintiff's claim that DOJ controlled the "non-proprietary" portion of the West-provided data. The licensing and ownership provisions applied to the entire contract.

In summary, the Plaintiff has failed to demonstrate that DOJ controlled the West-provided data. The 1988 contract does not copyright public domain data, and the contract's licencing provisions, which greatly restrict DOJ's right to use the data, applied to both "proprietary" and "non-proprietary" data.

It is those licencing provisions which convinces the Court that DOJ did not "control" the database to the extent required to make it an "agency record" under governing law. Under the terms of the contract, the West-provided data could not be (1) used outside the JURIS system; (2) used by anyone other than authorized JURIS users; (3) transferred or assigned; (4) stored, reproduced, transmitted or transferred for consideration; (5) distributed by JURIS users without obtaining a written agreement from the transferee not to further disseminate it; and (6) used in any way once the contract was terminated.

Thus, although DOJ certainly possessed the West-provided data, its right to use, transfer and/or dispose it was greatly restricted, and thus DOJ did not "control" the data in any common sense reading of that word. Surely, the data was not "subject to the free disposition" of DOJ. *Goland,* 607 F.2d at 347.

 Finally, the West-provided data is not the type of information that Congress, in enacting the FOIA, intended to make available to the public. As the Supreme Court has stated, "[t]he basic purpose of [the] FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the

governed." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978) (citation omitted). FOIA promotes the disclosure of information that will inform the public about what the executive branch is doing; that is, to reveal "official information" about the structure and the operation of agencies. *Department of Justice v. Reporters Committee for Freedom of Press,* 489 U.S. 749, 772, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989). *Forsham v. Harris,* 445 U.S. 169, 186, 100 S.Ct. 977, 987, 63 L.Ed.2d 293 (1980). In this case, Plaintiff is not seeking information about the structure, operation, or decision-making procedures of the Department.[11] Preventing access to this database does not permit DOJ to insulate itself from public scrutiny of its operations and regulatory decisions. The West-provided data does not provide information about the conduct of DOJ, and the disclosure of the data would not shed light on the conduct of any agency or official. *See Reporters Committee,* 489 U.S. at 772, 109 S.Ct. at 1481.

## VI. *Conclusion*

For the reasons discussed above, the West-provided data in JURIS is not an "agency record" under FOIA and this Court lacks jurisdiction to compel Defendant DOJ to disclose the information sought by Plaintiff.

Accordingly, Defendant DOJ's Partial Motion to Dismiss and Defendant–Intervenor West's Motion to Dismiss are **granted.**

---

11. Plaintiff's complaint states that the reason it seeks disclosure of the database is to provide the public with access to the legal material in electronic form. Pl.Complaint, ¶ 20. As already discussed, the public has access to the legal materials themselves, and West has an ownership interest in the electronic form of those legal materials.