UNITED WE STAND AMERICA and Russell J. Verney, Plaintiffs,

v.

INTERNAL REVENUE SERVICE, Defendant.

No. 01–0735 (ESH).

United States District Court, District of Columbia.

June 27, 2002.

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiffs.

R. Scott Clarke, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

### MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiffs United We Stand America, Inc. ("UWSA") and Russell J. Verney seek to compel disclosure under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, of thirty-four pages of documents that defendant Internal Revenue Service ("IRS") has refused to disclose. Initially, plaintiffs requested from the IRS "any and all documents, including but not limited to files, that refer or relate in any way to United We Stand America, Inc." (Complaint Ex. 1, Judicial Watch Letter of February 13, 2001.) The IRS provided plaintiffs with most of the requested documents, but refused to release the thirty-four pages now at issue. The parties have thus narrowed their dispute to a single question: whether the thirty-four pages withheld constitute "agency records," which must be produced under the FOIA, or "congressional records," which are exempt from disclosure. Plaintiffs argue that the documents are "agency records" because the IRS created them and retains a copy of them. In response, defendant asserts that since the documents were created pursuant to a congressional inquiry, they are "congressional records" not subject to disclosure under the FOIA. Based on the record before it, the Court holds that the documents in question are "congressional records" not subject to disclosure under the FOIA.

### BACKGROUND

On March 24, 1997, the Joint Committee on Taxation ("JCT"), a congressional committee that undertakes certain investigations with respect to the federal tax system, directed the JCT's Staff Director Kenneth Kies to investigate whether the IRS's selection of tax-exempt organizations for audit had been politically motivated. (Declaration of Lindy L. Paull ("Paull Decl.") Ex. B., Letter Directing Joint Committee Staff Investigation.) Kies then asked the IRS, by letter dated April 28, 1997, to provide the JCT with access to certain documents and information that the Joint Committee believed to be relevant to its investigation. (Paull Decl. ¶ 8.) Kies concluded his letter to the IRS by indicating: "This document is a Congressional record and is entrusted to the Internal Revenue Service for your use only. This document may not be disclosed without the prior approval of the Joint Committee." (Paull Decl. ¶ 8.)

In response to this inquiry, the IRS sent the JCT a seventeen-page letter dated June 13, 1997, with an additional seventeen pages of attachments.[1] (Miller Decl. ¶ 3.)

---

1. The three attachments consist of (1) a twelve-page list of organizations and the names of IRS employees who were involved in cases concerning those organizations, (2) a

The IRS retained a copy of both the letter and the attachments in its correspondence file dedicated to the JCT, which it kept separate and apart from ordinary IRS files. (Miller Decl. ¶ 8.) These documents were not used for any purpose other than to respond to the congressional inquiry. (Miller Decl. ¶ 7.)

On February 13, 2001, UWSA submitted a FOIA request to the IRS requesting "any and all documents, including but not limited to files, that refer or relate in any way to [UWSA]." (Complaint Ex. 1, Judicial Watch Letter of February 13, 2001.) After receiving no substantive response, plaintiffs filed their complaint on April 5, 2001. Since filing the complaint, plaintiffs twice refined their request in cooperation with the IRS to resolve outstanding procedural issues. (Declaration of R. Scott Clarke ("Clarke Decl.") ¶¶ 4, 6.) In January 2002, the IRS produced over five hundred pages of documents to plaintiffs, redacting some information under claims of exemption. (Joint Status Report of January 31, 2002 ¶¶ 1–2.) Defendant declined to produce an additional thirty-four pages of documents, claiming that these documents are not "agency records." (Joint Status Report of January 31, 2002 ¶ 3.) Defendant moved for summary judgment as to these thirty-four pages on April 26, 2002, and plaintiffs filed their opposition on May 10, 2002.

## LEGAL ANALYSIS

Summary judgment should be granted to the movant if it has shown, when the facts are viewed in the light most favorable to the nonmovant, that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Here, there are no genuine issues of material fact. (*See* Joint Status Report of March 12, 2002.)

■ In order for a document to be subject to FOIA disclosure, it must be an "agency record." 5 U.S.C. § 552(a)(4)(B). The FOIA does not define this term either in the statute's text or in its legislative history. *See, e.g., United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989) [hereinafter *Tax Analysts I* ]; *Goland v. CIA*, 607 F.2d 339, 345 (D.C.Cir.1978); *Tax Analysts v. United States Dep't of Justice*, 913 F.Supp. 599, 602 (D.D.C.1996) [hereinafter *Tax Analysts II* ]. However, the Supreme Court has held that a document is an "agency record" if (1) "an agency [ ] 'either create[s] or obtain[s]' the requested materials," and (2) "the agency [is] in control of the requested materials at the time the FOIA request is made." *Tax Analysts I*, 492 U.S. at 144–45, 109 S.Ct. 2841 (quoting *Forsham v. Harris*, 445 U.S. 169, 182, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980)). The burden rests with the agency to demonstrate that the materials sought are not "agency records." *Tax Analysts I*, 492 U.S. at 142 n. 3, 109 S.Ct. 2841.

The parties do not dispute that the IRS "created" the documents in question, but they disagree as to whether Congress or the IRS has "control" over the records. To determine control, the Court must undertake a fact-based inquiry to discern, based upon the totality of the circumstances, who intended to control the records in question. The central question is

four-page narrative listing of cases containing allegations of inappropriate behavior by IRS employees involving tax-exempt organizations, and (3) a one-page list of National Office cases and the estimated volume of docu-

ments in each case. (Declaration of Steven T. Miller ("Miller Decl.") ¶ 5.) Like the letter to which they were appended, these attachments were created solely in response to the JCT's inquiry. (Miller Decl. ¶ 3.)

"whether, considering all of the circumstances of the case including, of course, physical possession, the records at issue are 'subject to the free disposition of the agency.'" *Tax Analysts II,* 913 F.Supp. at 603 (quoting *Goland,* 607 F.2d at 347). Courts in this district have addressed this issue on numerous occasions.

The Court of Appeals applied the "control" prong in the context of a congressional inquiry in *Goland,* where plaintiffs sought the CIA's copy of a congressional hearing transcript that had been marked "secret." The Court held that the transcript copy located at the CIA was a "congressional record," and not an "agency record," because the CIA maintained a copy only for the limited purpose of internal reference, and Congress' intent to retain control of the document was clear. 607 F.2d at 347–48. It further noted that if the confidential information at issue were publicly divulged, "Congress would be forced either to surrender its constitutional prerogative of maintaining secrecy, or to suffer an impairment of its oversight role. We decline to confront Congress with this dilemma absent a more convincing showing of self-abnegating congressional intent." *Id.* at 346. *See also Tax Analysts I,* 492 U.S. at 145–47, 109 S.Ct. 2841 (finding agency control over records that agency possessed, integrated into records system, and relied upon in agency memoranda); *Paisley v. CIA,* 712 F.2d 686, 692–96 (D.C.Cir.1983), *vacated in part on other grounds,* 724 F.2d 201 (1984) (finding no congressional "control" over records because Congress neither created nor possessed the records); *Holy Spirit Ass'n v. CIA,* 636 F.2d 838, 841–43 (D.C.Cir.1980), *vacated in part on other grounds,* 455 U.S. 997, 102 S.Ct. 1626, 71 L.Ed.2d 858 (1982) (no intent to control when Congress returned records to CIA); *Tax Analysts II,* 913 F.Supp. at 602–07 (agency did not control data when right to use, transfer, and dispose of it was restricted); *Ctr. for Nat'l Sec. Studies v. CIA,* 577 F.Supp. 584, 589–90 (D.D.C.1983) (congressional intent to control document's confidentiality extended to duplicate copy of document possessed by agency for record-keeping purposes).

Relying upon *Goland* and its progeny, in *Tax Analysts II,* the Court identified four factors that are to be considered when determining "control": "(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files." 913 F.Supp. at 603 (citing *Dow Jones & Co. v. Gen. Servs. Admin.,* 714 F.Supp. 35, 39 (D.D.C.1989) (formulating test based on decision in *Tax Analysts v. U.S. Dep't of Justice,* 845 F.2d 1060, 1069 (D.C.Cir. 1988), *aff'd,* 492 U.S. 136, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989))).

■ Applying the above standards to the instant case, this Court concludes that the documents at issue are "congressional records," and are not "agency records" subject to disclosure under the FOIA. While the IRS created the documents, it intended at all times to relinquish control over them, and the IRS is not free to use or dispose of them as it sees fit because the JCT maintains control over them. Additionally, IRS personnel did not use the records for any of its regular agency functions, and the IRS kept the documents for internal reference purposes only.

Indeed, each factor listed in *Tax Analysts II* weighs in favor of concluding that Congress intended to control the records. *See* 913 F.Supp. at 603. First, as Steven T. Miller, Exempt Organizations Director

of the IRS, avers in his declaration, the IRS created the letter and its attachments for the sole purpose of responding to the JCT. (*See* Miller Decl. ¶¶ 6–9.) Thus, the IRS's intent at creation was to relinquish control over the records. Accordingly, the original records were transmitted directly to the party who requested that they be created, the JCT, while the IRS kept copies for internal reference purposes only and did not use them for any functional purpose. (*See* Miller Decl. ¶¶ 6–9.) Second, IRS personnel have not read or relied upon the documents beyond the extent required to create the documents, for as Miller avers, "the IRS has not used these records for any purpose other than that for which they were originally created—to respond to the Joint Committee's April 28, 1997 request." (Miller Decl. ¶ 7.) Third, the documents in question have not been integrated into the IRS's record system or files. The Exempt Organizations Division of the IRS maintains a copy of the documents in its files pertaining to correspondence between the IRS and the JCT, but this file is kept in a location separate from the office's ordinary files. (Miller Decl. ¶ 8.)

Lastly, if not most importantly, Congress prohibited the IRS from using or disposing of the records as it sees fit. Indeed, Congress expressed its clear intent to "control" such records. *See Paisley,* 712 F.2d at 692–93 (D.C.Cir.1983) (if Congress "has manifested its own intent to retain control, then the agency—by definition—cannot lawfully 'control' the documents . . ., and hence they are not 'agency records' "); *Goland,* 607 F.2d at 348 n. 48 (in ascertaining whether a record is a "congressional document," a court must consider "(1) Congress' clear intent to exempt congressional documents from disclosure under FOIA; (2) Congress' clear prerogative to prevent disclosure of its own confidential materials; and (3) the danger of inhibiting the legislative and judicial branches from making their records available to the executive branch"); *see also Holy Spirit Ass'n,* 636 F.2d at 842; *Ctr. for Nat'l Sec. Studies,* 577 F.Supp. at 587.

In the initial inquiry letter, the JCT explicitly asserts that the letter is confidential: "This document is a Congressional record and is entrusted to the Internal Revenue Service for your use only. This document may not be disclosed without the prior approval of the Joint Committee." (Paull Decl. ¶ 8.) According to the JCT's current Chief of Staff, "[t]his language is used by the JCT to reflect its intent that the document in question [the IRS's response] remain under the control of the JCT and not be subject to the 'free disposition' of the IRS, and it thereby retain its character as a congressional record for purposes of the Freedom of Information Act." (Paull Decl. ¶ 8 (citing *Goland,* 607 F.2d at 346–47).)[2]

Plaintiffs attempt to distinguish *Goland* by relying on the fact that Congress created the transcript in *Goland* of agency testimony by employing the stenographer and typist, whereas here, the IRS created the documents in question only in response to a Congressional inquiry. This distinction is insufficient, for the IRS created these documents in direct response to a congressional inquiry that was marked confidential. The records cannot be said to be the IRS's property, as the IRS is not free to dispose of them. Rather, like *Goland,* the

---

**2.** Plaintiffs argue that this language "clearly relates only to the letter itself." (Pl.Opp. at 6.) However, such a position is unpersuasive, for the IRS cannot release its response without revealing the contents of the JCT's inquiry letter. (Paull Decl. ¶ 11.) In fact, disclosure of these documents would defeat the entire purpose of the initial letter's demand for confidentiality, for it would necessarily reveal the contents of the initial letter.

IRS "holds the document, as it were, as a 'trustee' for Congress." 607 F.2d at 347. Although the IRS created the documents in question, the facts of this case are similar to the facts of *Goland* because Congress maintained control of the documents and the IRS kept a copy only for internal reference purposes.[3]

Plaintiff's reliance on the Court of Appeals' decision in *Holy Spirit Ass'n* is also misplaced. (Pl.Opp. at 5.) There, this Circuit ruled that documents were agency records only when Congress had returned them to the CIA after the agency had created them in response to a congressional investigation. *See* 636 F.2d at 843. Congress "failed to retain control over them" by sending the records back to the CIA. *Id.* The Court clearly indicated that the significant factor was returning the records to the CIA, for "even if these CIA-created records were once congressional documents because generated in response to congressional inquiries and transferred to Congress, they subsequently lost their exemption as congressional records when Congress failed to retain control over them." *Id.*

Here, the JCT retained control of the original records, leaving the IRS with only a copy for administrative purposes. Furthermore, the JCT has consistently maintained its intent to control these records. When UWSA made a prior FOIA request for the very same documents, the JCT specifically told the IRS not to release them because they were congressional records. (Paull Decl. ¶ 13.) Moreover, the JCT has indicated that its "longstanding practice and course of dealing with the IRS" is to keep such communications confidential. (Paull Decl. ¶ 9.) According to Paull, "it is critical that JCT communications with the IRS be protected from compelled public disclosure" for several reasons. (Paull Decl. ¶ 9.) For example, unauthorized release of JCT materials could allow the tax bar and the public to structure business transactions in anticipation of possible changes in the tax law. Moreover, the JCT must be able to retain control over its investigations for effective oversight and consideration of legislation, which would be undermined if materials were likely to become public. (Paull Decl. ¶¶ 6, 9.)

Lastly, the policy concerns raised in *Goland* are equally pertinent here, for as recognized by the Court, "Congress exercises oversight authority over the various federal agencies, and thus has an undoubted interest in exchanging documents with those agencies to facilitate their proper functioning in accordance with Congress' originating intent." *Goland,* 607 F.2d at 346. Were the Court to accept plaintiffs' argument, Congress would be faced with the same dilemma the Court in *Goland* sought to avoid: "Congress would be forced either to surrender its constitutional prerogative of maintaining secrecy, or to suffer an impairment of its oversight role." *Id.*

**CONCLUSION**

Accordingly, following the rationale of *Goland,* the Court will not hinder Congress' constitutional prerogative by ordering release of documents intended only for the JCT merely because the IRS maintained a copy of these documents. There-

---

3. In this regard, it is noteworthy that several courts in this district have held that agency-created documents may be considered congressional records when Congress expresses a clear intent that the documents remain confidential. *See, e.g., Holy Spirit Ass'n,* 636 F.2d at 843; *Judicial Watch v. Clinton,* 880 F.Supp. 1, 11 (D.D.C.1995); *Ctr. For Nat'l Sec. Studies,* 577 F.Supp. at 588; *see also Navasky, v. CIA,* 499 F.Supp. 269, 278 (S.D.N.Y.1980).

fore, defendant is not required to produce the records in question, and its motion for summary judgment is granted.

### ORDER

Upon consideration of Defendant's Motion for Summary Judgment [23–1], plaintiffs' opposition thereto, defendant's reply, and the record herein, it is this 26th day of June 2002, hereby

**ORDERED** that defendant's motion for summary judgment is **GRANTED;** and it is

**FURTHER ORDERED** that plaintiffs' complaint is **DISMISSED** with prejudice.